# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KARL LEE MYERS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )    **Case No. 02-CV-140-GKF-PJC** |
| | ) |
| **RANDALL G. WORKMAN,[1] Warden,** | ) |
| **Oklahoma State Penitentiary,** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

This matter comes before the Court on the petition, as amended, of Karl Lee Myers ("Myers"

or "Petitioner") for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Myers is a death row

prisoner in the State of Oklahoma following conviction on two counts of first-degree murder.  In this

habeas corpus proceeding, he challenges his conviction and sentence for the 1996 murder of Cindy

Marzano.[2] He also presents constitutional challenges to his post-conviction mental retardation trial.

Respondent filed a response to the petition, and Myers filed a reply. With leave of Court, Myers

filed an amendment to the petition. Respondent filed a response to the amended petition, and Myers

filed a reply. The state court record has been produced.[3] The Court considered all of these materials

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the **Court Clerk** shall be directed to substitute Randall G. Workman for Marty Sirmons as the party Respondent.

[2] Although Myers was charged with two counts of First Degree Murder in Rogers County District Court Case No. CF-96-233, the two counts were severed for trial. He was also convicted and sentenced to death on the second count for the murder of Shawn Williams. His habeas case related to that count is currently pending in the Northern District of Oklahoma, Case No. 07-CV-131-JHP-TLW.

[3] References to documents and pleadings shall be referred to by docket number, where feasible (Dkt. # ___); references to the trial transcript from the original trial shall be referred to as "Tr. Trans. Vol. ___ at ___;" references to the trial transcripts from the mental retardation trial shall be referred to as "MR Tr. Trans. Vol. ___ at ___." The original state court record shall be identified as

in reaching its decision. For the reasons discussed below, the Court concludes the petition, as amended, should be denied.

## BACKGROUND

### I.    Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. In considering the issues presented in the petition, the Court relied upon the following synopsis from the Oklahoma Court of Criminal Appeals ("OCCA") in that court's direct appeal opinion. Following review of the record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds this summary by the OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own.[4]

> The victim, Cindy Marzano, and Appellant were acquaintances. She left home for work on March 14, 1996, bearing no bruises or wounds on her face or head. She drove her 1984 silver Chevrolet Impala to work for her 1:00 p.m. to 9:00 p.m. shift. While at work she spoke to Appellant twice between 7:00 p.m. and 8:00 p.m. and was overheard agreeing to meet Appellant after work. She checked out at 9:09 p.m. and was seen thereafter at Denny's restaurant where she and a man remained about thirty (30) minutes.
>
> At 11:51 p.m., Appellant was at a convenience store, where he had been a regular customer, and remained two to two and one-half hours. He washed his truck while there and told the clerk he had been at a relative's house. At 12:30 a.m., Cindy Marzano was found floating face down in the water at the Highway 33 Landing on the navigation channel near the Port of Catoosa. Her blouse and bra were pulled up and she had bruises on her forehead, upper left arm and neck. She had cuts on her face and an abrasion between her shoulder blades. She had bruises on her right thigh and left leg. These injuries were suffered prior to death. Asphyxiation was

---

"O.R. Vol. ____ at ____."

[4] Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the Court's analysis. In particular, facts summarized by the OCCA in its opinion affirming Myers' post-conviction mental retardation ("MR") trial are also presumed correct unless rebutted by Myers by clear and convincing evidence, pursuant to 28 U.S.C. § 2254(e)(1).

determined to be the cause of death. DNA testing established that spermatozoa found in her vagina matched Appellant's DNA.

Appellant first denied that he had seen the victim that night. He finally admitted talking to the victim that night at her work. He said they agreed to meet at Denny's for coffee, and he was home by 11:45 p.m. He denied any physical contact with the victim. He later admitted to having consensual sex with the victim that night.

Inmate Sidney Byrd testified that Appellant admitted killing two women, and further admitted that (concerning Cindy Marzano) "he was fucking her from behind when he strangled her and she died."

Myers v. State, 17 P.3d 1021, 1026 (Okla. Crim. App. 2000) (hereinafter "Myers DA").

## II.    Procedural History

Following a jury trial held between February 23, 1998, and March 18, 1998, in the District Court of Rogers County, Oklahoma, Case No. CF-96-233, Myers was convicted of Murder in the First Degree for the death of Cindy Marzano. Joe P. Robertson and William Higgins, attorneys with the Oklahoma Indigent Defense System ("OIDS") represented Myers at trial. At the conclusion of the sentencing stage, Myers' jury found the existence of four aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel; (2) the murder was committed by a person convicted of a felony involving the use or threat of violence to the person; (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. See O.R. Vol. IV at 574.  On May 19, 1998, in accordance with the jury's recommendations, the trial court sentenced Myers to death on the murder conviction (Id. at 601).

Myers filed a direct appeal of his conviction and sentence to the OCCA in Case No. F-98-646. Represented by OIDS attorneys Perry Hudson and Janet Chesley, Myers raised the following fourteen (14) propositions of error:

Proposition I:       Appellant's Sixth and Fourteenth Amendment rights were violated when the trial court refused to excuse a juror who could not fully consider all three sentencing options.

Proposition II:      The admission of evidence of other unrelated crimes unfairly prejudiced Mr. Myers and deprived him of a fair trial.

Proposition III:     The evidence presented at trial was insufficient to support Mr. Myers' conviction for first degree murder.

Proposition IV:      Appellant's statutory rights were violated when the State elicited improper opinion testimony from Dr. Ronald Distefano.

Proposition V:       The admission of highly prejudicial photographs violated Mr. Myers' Sixth, Eighth, and Fourteenth Amendment rights.

Proposition VI:      Prosecutorial misconduct in both stages of the trial deprived Mr. Myers of due process of law and a reliable sentence.

Proposition VII:     Mr. Myers' constitutional rights were violated by the improper admission of testimony from State's witness Charles Sharp.

Proposition VIII:    Appellant's statutory rights were violated when he was viewed in handcuffs during the second stage of his trial.

Proposition IX:      The victim impact evidence violated the victim impact statute and Mr. Myers' rights protected by the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

Proposition X:       Appellant's jury was misinstructed on the "especially heinous, atrocious or cruel" aggravating circumstance in violation of his Eighth and Fourteenth Amendment rights.

Proposition XI:      Appellant's death sentence rested in part on unconstitutional aggravating circumstances in violation of the Eighth and Fourteenth Amendments.

4

Proposition XII:      The State presented insufficient evidence to support the murder to avoid arrest aggravator.

Proposition XIII:      Mr. Myers was deprived of effective assistance of counsel in violation of the Sixth, Eighth and Fourteenth Amendments and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition XIV:      The accumulation of errors in this case so infected the trial and sentencing with unfairness that Mr. Myers was denied due process of law and a reliable sentencing proceeding.

See Brief of Appellant in OCCA Case No. F-98-646.

On December 8, 2000, the OCCA affirmed Myers' conviction and death sentence. Myers DA, 17 P.3d at 1039. The OCCA denied a rehearing on January 29, 2001. Id. at 1021. The United States Supreme Court denied Myers' subsequent petition for writ of *certiorari* on October 1, 2001. Myers v. Oklahoma, 534 U.S. 900 (2001).

Myers filed his first application for post-conviction relief on June 29, 2000, in OCCA Case No. PCD-2000-516. Represented by OIDS attorney Dora Roberts, he presented the following six (6) grounds for relief:

Proposition I:      Legislative Amendments to 22 O.S. Supp. 1996, Section 1089 violate Article 2, Sections 6 and 7 of the Oklahoma Constitution, the Supremacy Clause in Article 6 of the United States Constitution, and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Proposition II:      If this court finds any post-conviction claim procedurally "barred" due to: (1) failure of direct appeal counsel to raise the claim on direct appeal or (2) the "availability" of extra-record factual material supporting the claim at the time of direct appeal, this case should be remanded for a full and fair evidentiary hearing to address the systemic inadequacy of appellate representation at the time of Mr. Myers' direct appeal.

Proposition III:      Should the Court find any one or more of the aggravators to be invalid, Mr. Myers should receive a new sentencing by a jury rather [than] the Court's "reweighing" process which has evolved into the

5

aggravators always outweighing the mitigators on reweighing. Further, the reweighing process itself violates due process.

Proposition IV:      The death penalty constitutes unnecessarily cruel and/or unusual punishment.

Proposition V:       This Court should adopt the recommendation of the American Bar Association and impose a moratorium on this and all other executions in the State of Oklahoma.

Proposition VI:      Oklahoma's clemency scheme, as currently applied, denies death sentenced petitioners even the most basic procedural due process, and execution of Mr. Myers with such a scheme in place would violate his rights to due process under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

See Application for Post-Conviction Relief in OCCA Case No. PCD-2000-516.  All requested relief was denied on February 6, 2001, in an unpublished opinion. See Order Denying Post-Conviction Relief and Evidentiary Hearing in OCCA Case No. PCD-2000-516.

Myers initiated this federal habeas action by filing an application for appointment of counsel on February 19, 2002 (Dkt. # 1).  On June 20, 2002, the Supreme Court issued its opinion in Atkins v. Virginia, 536 U.S. 304 (2002). In Atkins, the Supreme Court found that executions of mentally retarded criminals constitute cruel and unusual punishment prohibited by the Eighth Amendment. Id. at 321.  In his petition (Dkt. # 16), filed on September 27, 2002, Myers identified sixteen (16) grounds for relief. However, contemporaneously with the filing of the petition, Myers filed a motion to hold this matter in abeyance to allow him to present an Atkins mental retardation claim to the OCCA in a second application for post-conviction relief (Dkt. # 20).  Respondent filed a response to the petition on December 26, 2002 (Dkt. # 30), and Myers filed a reply on March 6, 2003 (Dkt. # 34).  Aware that Myers filed a second application for post-conviction relief in state court raising the Atkins mental retardation issue, this Court found that an abeyance of these habeas proceedings

6

was appropriate during the pendency of Myers' second application for post-conviction relief and granted the requested stay (Dkt. # 36).

Myers' second application for post-conviction relief was filed on November 4, 2002, in OCCA Case No. PCD-2002-978. Represented by OIDS attorneys Bryan Dupler and Vicki Werneke, he raised the following propositions of error:

Proposition I:      In light of the Supreme Court's recent ruling that executions of the mentally retarded are cruel and unusual punishment, Petitioner's death sentence should be vacated and modified to a non-capital sentence or remanded for a new sentencing determination.

Proposition II:     Prior counsel's failure to adequately develop and present available mitigating evidence deprived Mr. Myers of effective assistance of counsel in trial, appeal, and post-conviction proceedings.

Proposition III:    The trial court's failure to instruct the jury that a critical factor in the sentencing stage had to be found beyond a reasonable doubt deprived Mr. Myers of a fair sentencing determination in violation of the Oklahoma Constitution and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

On August 1, 2003, the OCCA rejected the second and third propositions in an unpublished opinion, but remanded the case to the district court for an evidentiary hearing on Myers' claim of mental retardation. See Order Denying, In Part, Second Application for Post-Conviction Relief and Granting Evidentiary Hearing filed in OCCA Case No. PCD-2002-978. On November 7, 2003, the state district court judge reported to the OCCA that Myers had made a prima facie showing that he was mentally retarded. The OCCA then remanded Myers' case to the state district court for a jury trial to determine if he was mentally retarded. See Order dated January 28, 2004, in OCCA Case No. PCD-2002-978. Upon conclusion of the trial, the jury determined that Myers was not mentally retarded. Myers appealed this decision on January 18, 2005, by filing a "Supplemental Brief of Petitioner on Post-conviction Review of the Judgment of the Rogers County District Court,

7

Following Remand for Jury Trial." The following four propositions of error were raised in the supplemental brief:

Proposition 1: The trial court's instruction that mental retardation must be "present and known" before age 18 violated *Atkins v. Virginia*, 536 U.S. 304 (2002).

Proposition 2: The trial court erred by denying Mr. Myers' request to submit non-unanimous verdict forms to the jury.

Proposition 3: The trial court erred by refusing to quash the venire and change venue.

Proposition 4: The facts proven at trial show Karl Myers' mental retardation as a matter of Constitutional law.

On November 17, 2005, the OCCA entered its order denying relief to Myers. <u>Myers v. State</u>, 130 P.3d 262 (Okla. Crim. App. 2005) (hereinafter "<u>Myers MR</u>").[5]

On May 17, 2006, while his federal habeas corpus case was still pending before this Court, Myers filed a request to file a third application for post-conviction relief out of time in OCCA Case No. PCD-2006-542. In its order denying the application, the OCCA stated that the application claiming ineffective assistance of trial and appellate counsel appointed for his mental retardation litigation should have been filed within sixty (60) days from the date of <u>Myers MR</u>. <u>See</u> Dkt. # 58, attachment 1.

On April 21, 2006, Myers filed a motion for leave to amend his petition for writ of habeas corpus in this case to include the <u>Atkins</u> issues raised in his second post-conviction proceeding (Dkt. # 52). By Order entered June 19, 2006, the Court lifted the stay on these habeas corpus

_____

[5] The OCCA stated that, although the appeal remained a part of Myers' second post-conviction case, errors alleged to have occurred during the mental retardation jury trial were reviewed in the same manner as errors raised on direct appeal from a trial on the merits. <u>Myers MR</u>, 130 P.3d at 265. In its decision, the OCCA affirmed the jury's finding that Myers is not mentally retarded and denied the application for post-conviction relief. <u>Id.</u> at 270.

proceedings and granted Myers' request to file an amended petition (Dkt. # 55). Myers filed the

amended petition,  incorporating all facts, arguments and exhibits attached to his initial petition and

presenting "only those claims which have recently been exhausted in state court." See Dkt. # 56 at

1. Respondent filed a response (Dkt. # 68), and Myers filed a reply to the response (Dkt. # 78). The

petition, as amended, identifies the following seventeen (17) grounds for relief:

Ground I:          Evidence of unrelated crimes admitted at trial denied Mr. Myers a
                   fair trial under the Eighth and Fourteenth Amendments.

Ground II:         The trial court's failure to excuse a juror who could not consider fully
                   all three sentencing options denied Mr. Myers' rights to a fair trial
                   under the Sixth, Eighth, and Fourteenth Amendments.

Ground III:        The use of a jail house snitch denied Mr. Myers a fair trial under the
                   Eighth and Fourteenth Amendments.

Ground IV:         The use of opinion testimony of the State's expert witness denied Mr.
                   Myers a fair trial.

Ground V:          The State of Oklahoma failed to present sufficient evidence to prove
                   beyond a reasonable doubt Mr. Myers is guilty of this crime in
                   violation of the Sixth, Eighth, and Fourteenth Amendments.

Ground VI:         Comments of the prosecution in both stages denied Mr. Myers a fair
                   trial and sentencing hearing in violation of the Eighth and Fourteenth
                   Amendments.

Ground VII:        Mr. Myers' constitutional right to a fair sentencing process was
                   violated by the admission of an immunized statement concerning
                   another crime to support the continuing threat aggravating
                   circumstance.

Ground VIII:       Allowing the jurors to see Mr. Myers in handcuffs denied him a fair
                   sentencing proceeding in violation of the Eighth and Fourteenth
                   Amendments.

Ground IX:         The heinous, atrocious or cruel aggravating circumstance was not
                   properly defined and was not supported by any relevant evidence.

Ground X:           No evidence was presented to support the "avoiding lawful arrest or prosecution" aggravating circumstance, in violation of the Eighth and Fourteenth Amendments.

Ground XI:          The "continuing threat to society" aggravating circumstance is vague and not supported by sufficient evidence to support its finding.

Ground XII:         The testimony of Mark Marzano concerning the impact of the death of his wife violated Mr. Myers' guarantees under the Eighth and Fourteenth Amendments.

Ground XIII:        Mr. Myers was denied the effective assistance of trial and appellate counsel (additional argument added in amended petition).

Ground XIV:        Mr. Myers' death sentence violates the Eighth Amendment because he is mentally retarded (additional argument added in amended petition).

Ground XV:         Mr. Myers was denied a fair trial and a reliable sentencing process because of the accumulation of errors in violation of the Eighth and Fourteenth Amendments.

Ground XVI:        Mr. Myers may not be competent to be executed.

Ground XVII:       (new in amended petition) The procedures employed by the State of Oklahoma to litigate Mr. Myers' mental retardation claim were constitutionally inadequate and cannot be afforded deference by this Court.

See Dkt. ## 16, 56. The Court's ruling on each of Myers' claims is discussed below.

## GENERAL CONSIDERATIONS

## I.    Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to

address and correct alleged violations of state prisoner's federal rights." <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity").  In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal. Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion. <u>Coleman</u>, 501 U.S. at 735 n.1 (citations omitted). Respondent contends that some of Myers' claims are unexhausted. Therefore, the Court will address the threshold question of exhaustion as it arises in each ground.

## II.      Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. <u>See</u>, <u>e.g.</u>, <u>Francis v. Henderson</u>, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground. <u>Coleman</u>, 501 U.S. at 750; <u>Medlock v. Ward</u>, 200 F.3d 1314, 1322-23, 1028 (10th Cir. 2000). A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985); <u>Duvall v. Reynolds</u>, 139 F.3d 768 (10th Cir. 1998).  If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate."  <u>Maes v. Thomas</u>, 46 F.3d 979, 986 (10th Cir. 1995) (citing <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982)). To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims

were not addressed in the federal habeas proceeding. <u>Coleman</u>, 501 U.S. at 749-50; <u>Wainwright</u>, 433 U.S. at 91.

## III.   Standard of Review - AEDPA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>Snow v. Sirmons</u>, 474 F.3d 693, 696 (10th Cir. 2007).  Under AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. <u>Alverson v. Workman</u>, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing <u>Snow</u>, 474 F.3d at 696). When a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established[6] Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>See</u> 28 U.S.C. § 2254(d)(1)(2); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. <u>See Bell v. Cone</u>, 535 U.S. 685, 699 (2002); <u>Hooper v. Mullin</u>, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). Additionally, the "determination of a factual issue made by a State court shall be presumed to be

---

[6] A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006).

correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Myers' habeas proceedings in the instant matter commenced well after the effective date of AEDPA. Although the crime for which Myers was convicted predates the law's enactment, the provisions of the Act govern pursuant to <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). Therefore, to the extent Myers' claims are cognizable in a federal habeas corpus proceeding and not procedurally barred, those claims shall be reviewed pursuant to § 2254(d).

<u>**GROUNDS FOR RELIEF**</u>

**I**.      **Admission of evidence of unrelated crimes (Ground 1)**

In his first ground for relief, Myers contends that his Eighth and Fourteenth Amendment rights were violated by the admission of evidence of unrelated crimes. Specifically, Myers complains that the trial court should not have allowed the testimony of Bonnie Makin Hames, Stacy Fain, and Patricia Lynn Curry. The OCCA rejected this claim on the merits in Myers' direct appeal proceedings. Respondent asserts that the OCCA's ruling was not based on an unreasonable determination of the facts or an unreasonable application of Supreme Court law.

a.      *Testimony of Bonnie Hames and Stacy Fain*

The last two prosecution witnesses in the first stage of trial were Bonnie Hames and Stacy Fain. Each testified about molestation incidents which occurred many years before Myers' 1998 trial.

Prior to trial, the State filed a Notice of Intent to offer evidence of other crimes, including the testimony of Bonnie Hames and Stacy Fain. <u>See</u> O.R. Vol. III at 393, 402. As the OCCA noted, Myers challenged the admission of this evidence, and the trial court conducted hearings to determine

the issue (Myers DA, 17 P.3d at 1028). The trial court allowed admission of their testimony based upon Okla. Stat. tit. 12, § 2404 (B).[7] To the extent Myers contends that the admission of this testimony was a violation of Oklahoma's statute, (Dkt. # 16 at 12), the claim is not reviewable in this federal habeas corpus proceeding. Habeas review is not available to correct state law evidentiary errors. Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (habeas review is limited to violations of constitutional rights)). This Court is concerned only with the possible infringement of federal constitutional rights. Accordingly, the Court will review the trial court's evidentiary ruling only insofar as Myers' federal constitutional rights may have been impacted.

Ms. Hames testified that in 1976 she was acquainted with Myers because he was a friend of one of her sisters.  Tr. Trans. Vol. VIII at 2229-230. She was twelve (12) years old at the time, and was staying with her sister in Picher, Oklahoma, for the summer. Id. While walking along a street in town, she was offered a ride by Myers. Thinking he was a friend, she accepted. Id. at 2232. Ms. Hames testified that Myers drove her down a dirt road to a remote area, then began hitting her. He ripped off her clothes. Id. at 2232-233. He choked her and sexually assaulted her. Id. at 2233-235. After the assault, Myers gave Ms. Hames back some of her torn clothes and returned her to Picher.

---

[7] Section 2404(B) addresses the limitations on evidence of other crimes, as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Okla. Stat. tit. 12, § 2404 (B). The OCCA has found on more than one occasion that the enumerated exceptions in Section 2404(B) were not intended to be exclusive or exhaustive. See Myers DA, 17 P.3d at 1029 (accumulating cases).

Id. at 2236. She reported the crime. Myers was convicted[8] and sentenced to twenty (20) years in prison. Id. at 2238-239.

Stacy Fain identified Myers as her step-father. She testified about two incidents which occurred in 1988, when she was thirteen (13) years old. Id. at 2254, 2256-265. Myers took Ms. Fain to Wal-Mart to buy a birthday present for her mother. When they left, he drove into the country, telling her he wanted to show her some land he was thinking of buying. Id. at 2256-57. They left the car and were in the woods when Myers sexually assaulted her. Id. at 2258. He moved her one piece bathing suit to the side, exposing her genitals and kissed and fondled her. Id. at 2259. Myers pulled his pants down and forced Ms. Fain to touch him. They did not have sexual intercourse. Id. Ms. Fain testified that they returned home and Myers threatened to kill her and her family if she told anyone what had happened. Id. at 2260. Frightened by his threats, she did not tell anyone about the incident at that time. Id.

The second incident occurred two to three weeks later, at their home while Ms. Fain's mother was at work. Id. at 2260-261. Myers came into Ms. Fain's bedroom and began rubbing her bottom. Id. at 2261. She ran into the bathroom and locked the door, but Myers pushed or kicked the door open. Id. at 2261-262. Myers removed her nightgown and began kissing her breasts. He dragged her into the living room, fondled her some more, and asked her to perform oral sex. Id. at 2263. Again, they did not have intercourse. After Myers left for work, Ms. Fain called her mother at work and told her what had happened. She then ran to a friend's house. Her friend's mother contacted the police.

---

[8] Although Bonnie Hames could not remember the exact crime for which Myers was convicted, the prosecutor was allowed to read a portion of the Judgment and Sentence to the jury which stated he was convicted of "assault with intent to rape, first degree." Tr. Trans. Vol. VIII at 2248.

15

Ms. Fain was removed from her mother's home by authorities, and spent the rest of her childhood living with her biological father. Id. at 2266. Ms. Fain testified that charges were not filed against Myers regarding this incident because she had not had a physical exam. Id. at 2267.

Following Bonnie Hames' testimony and immediately before Stacy Fain testified, the trial judge gave the following limiting instruction to the jury:

> Ladies and Gentlemen of the Jury, evidence has been received from Ms. Makin [Hames] yesterday and from witnesses which will be put on by the State this morning. This evidence is being received by you alleging that the defendant has committed misconduct offenses other than that charged in the Information. You may not consider this evidence from Ms. Makin or the evidence from this witness who will take the stand this morning. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offenses charged in this [I]nformation. This evidence has been received solely on the issue of the defendant's alleged motive, intent, or common scheme or plan. This evidence is to be considered by you only for the limited purpose for which it was received. This admonition and instruction to you pertains to any evidence in this trial of alleged misconduct or bad acts of the defendant other than that charged with the Information. That evidence must only be considered by you for that limited purposed.
>
> You will receive this instruction again at the close of evidence in the case when you receive your other instructions.[9]

See Tr. Trans. Vol. VIII at 2249.

On direct appeal, the OCCA determined the evidence presented through the testimony of Bonnie Hames and Stacy Fain was probative and properly admitted. Myers DA, 17 P.3d at 1030. Explaining its rationale, the OCCA reasoned:

---

[9] Prior to reading the final instructions to the jury, defense counsel sought clarification and objected to the inclusion of language that the evidence of other crimes was received to show a common scheme or plan. Tr. Trans. Vol. X at 2779-780. The trial judge agreed, concluding that the testimony regarding other crimes "really was received only on the issues of motive and intent." Id. at 2784. Thus, the final limiting instruction given to the jury stated that such evidence was to be considered "solely on the issue of the defendant's alleged motive or intent." Id. at 2805.

16

Appellant, in one of his statements, claimed that he had consensual sex with Marzano. However, similarities between the two prior acts and the present case, make it more probable that Marzano did not consent to sexual intercourse with Appellant. Further, there are striking similarities between the assaults which are probative of motive, intent, and common scheme or plan. In all three instances Appellant was acquainted with the victim; the victims were lured into automobiles; all of the victims were forcefully and sexually assaulted; the assailant threatened to kill the first two victims and did kill the third.

Another reason for admission was to show Appellant's motive for murder. Having received a stiff prison sentence following the Hames assault, and having been investigated following the Fain assault, although he avoided criminal charges, presents a sufficient factual basis to support the submission of the evidence to the jury as proof of motive for and as proof of intent in the instant case. The jury may well have determined that Appellant intended to kill Cindy Marzano in order to avoid punishment and investigation similar to what he endured after the other assaults.

Id. at 1029. Although the OCCA expressly acknowledged that Myers challenged the fairness of his trial as a result of the admission of this testimony, its decision on direct appeal relied largely on state law precedent to address the claim. Nonetheless, AEDPA deference applies. See Welch v. Sirmons, 451 F.3d 675, 691-92 (10th Cir. 2006), *abrogated on other grounds in* Wackerly v. Workman, 580 F.3d 1171 (10th Cir. 2009) (quoting Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002)). This Court's concern is that the OCCA's reasoning and result not contradict controlling Supreme Court precedent. See Packer, 537 U.S. at 8.

To be entitled to federal habeas relief, Myers must establish that the OCCA's determination of this issue is contrary to or an unreasonable application of clearly established federal law. As the Tenth Circuit explained in Welch, the clearly established federal law governing habeas review of admission of other crimes evidence is found in the Due Process Clause of the Fourteenth Amendment which provides a mechanism for relief "when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair.'" Welch, 451 F.3d at 688 (quoting Payne

v. Tennessee, 501 U.S. 808, 825 (1991)). Considerable deference must be given to state court evidentiary rulings, and may not provide habeas relief unless those rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002); see also Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir. 1979) ("State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."). In this case, Myers has not demonstrated that the trial court's evidentiary rulings admitting the testimony of Bonnie Hames and Stacy Fain rendered his trial, as a whole, fundamentally unfair.

In Oklahoma, evidence of other crimes is generally inadmissible. Okla. Stat. tit. 12, § 2404(B). However, it may be admitted to prove intent, identity, motive, absence of mistake and common scheme or plan embracing both crimes where proof of one tends to establish the other. Brinlee, 608 F.2d at 850 (citing Bryant v. State, 585 P.2d 377, 380 (Okla. Crim. App. 1978), and Bond v. State of Oklahoma, 546 F.2d 1369, 1378 (10th Cir. 1976)). Myers argues that the challenged evidence does not meet any of the exceptions. However, the OCCA explained that the testimony of Bonnie Hames and Stacy Fain was relevant to motive and intent. Myers DA, 17 P.3d at 1030. This Court agrees. The Court finds no infringement of federal constitutional rights in the admission of the questioned testimony. The admission of Bonnie Hames' and Stacy Fain's testimony did not render Myers' trial fundamentally unfair. Because the OCCA's rejection of this issue was not an unreasonable application of Supreme Court law, Myers is not entitled to habeas corpus relief on this portion of his ground one claim.

18

b.      *Testimony of Patricia Curry*

Myers next alleges that Patricia Curry's testimony was improperly admitted. The OCCA found that Ms. Curry's testimony was not evidence of other crimes, but was directly related to the murder of Cindy Marzano. On direct appeal, the OCCA held:

> Appellant also complains that the witness, Patricia Curry, testified that in July of 1996 Appellant told her that "you could dispose of women very easily" either in the soft sand in east Texas or at Rocky Point (located a short distance from the location of Cindy Marzano's body) and that the testimony constituted "other crimes evidence." In fact, this testimony related to the crime in question and not to other crimes as far as the jury was concerned (the trial court had excluded evidence of the murder of Shawn Marie Williams who in fact was found at Rocky Point). The evidence was admissible as an admission by Appellant directly relating to the murder of Marzano.

Id. at 1030. Myers fails to demonstrate how the OCCA's decision was an unreasonable application of Supreme Court law, or that it was based on an unreasonable determination of facts. Instead, he simply complains that Ms. Curry's testimony "provided an atmosphere to the trial which cast Mr. Myers as a killer," and was "undependable" and "speculative." See Dkt. # 16 at 14. Nothing presented by Myers in this habeas action suggests that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of Supreme Court law. Therefore, he is not entitled to habeas corpus relief on this claim.

c.      *OCCA's "greater latitude" approach*[10]

In challenging the OCCA's adjudication of his claim that the trial court improperly allowed admission of evidence of other crimes, Myers contends that the OCCA violated his Due Process rights by creating new evidentiary standards. See Dkt. # 16 at 12, 16-19. Specifically, Myers objects

---

[10] In James v. State, 152 P.3d 255 (Okla. Crim. App. 2007), the OCCA overruled its decision in Myers DA insofar as it created a "greater latitude rule" for admission of evidence in sexual assault cases. The James court found the rule "unworkable." James, 152 P.3d at 257.

to the OCCA's statement that "[T]he evidence would be admissible under the 'greater latitude' rule recognized today for cases involving sexual assaults." Myers DA, 17 P.3d at 1030.  Myers argues that the OCCA's adoption of this new, less stringent rule for allowing admission of evidence of other crimes in sexual assault cases was unexpected and announced with "no warning." (Dkt. # 16 at 17). Thus, Myers argues he was denied a fair trial.

Although the OCCA devoted several paragraphs to explain its adoption of the "greater latitude" rule, the state appellate court did not rely on the new rule to reject Myers' claim relating to evidence of other crimes. Significantly, the OCCA found that the evidence was properly admitted "under current Oklahoma law." Myers DA, 17 P.3d at 1030. The OCCA did not find it necessary to apply its newly adopted "greater latitude" approach to Myers' case. Id. Thus, the adoption of the new rule in Myers' case had no effect on the court's ruling. Habeas relief shall be denied on this portion of Myers' ground one claim.

## II.     Trial court's failure to ensure an impartial jury (Ground 2)

In his second ground for habeas relief, Myers contends that the trial court's rulings during *voir dire* denied him an impartial jury in violation of the Sixth, Eighth and Fourteenth Amendments. First, he claims that prospective juror Janice Irene Riggs should have been excused for cause "based on her inability to consider two of the three potential punishments in the case." See Dkt. # 16 at 22. Myers argues that he was forced to use a peremptory challenge to remove Juror Riggs. Second, because he had limited peremptory challenges, Myers was unable to remove Juror Smith, also a partial juror.  Upon review of the merits, the OCCA rejected this claim on direct appeal. Respondent asserts that Myers has failed to establish that the OCCA's determination was contrary to, or an

20

unreasonable application of, Supreme Court law, or that it was an unreasonable determination of the facts. See Dkt. # 30 at 26.

      *a.*    *Prospective Juror Riggs*

In support of his claim that it was necessary to use a peremptory challenge to remove prospective Juror Riggs from the jury panel, Myers points to the following answers given by her when questioned by defense counsel during *voir dire*:

Q:    Do you think in a first degree murder case it's more appropriate more of the time or less of the time? [referring to the death penalty]

A:    More of the time.

Q:    Why do you say that?

A:    You yourself asked a question if somebody believed in the eye for an eye.

Q:    Uh-huh.

A:    I more or less have that attitude.

Q:    So if somebody is charged with killing somebody and they prove that to your satisfaction that he did, then he should be put to death?

A:    Yes, sir.

Tr. Trans. Vol. III at 732. However, defense counsel's further questioning prompted the following responses from prospective Juror Riggs:

Q:    If they [the prosecution] prove first all of the elements of the information of first degree murder, first stage. And then if in the second staying [sic], they are successful in proving the aggravating circumstances that they are required to beyond a reasonable doubt, will your vote at this time be for the death penalty?

           . . .

A:    More than likely.

Q:      So is it a correct statement that you will not at that time consider life or life without parole?

A:      I'm a reasonable person.

Q:      But will you consider life or life without parole?

A:      I would consider it, yes.

Q:      But not very much [?].

A:      If I felt he was truly guilty, probably not.

Id. at 735-36.  At this time, defense counsel moved that prospective Juror Riggs be excused for cause "based upon her inability to consider to [sic] two of the three potential punishments in the case." Id. at 736. The trial judge denied the motion, then asked some additional questions of Ms. Riggs, including the following:

Q:      If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree and if under the evidence, facts and circumstance of the case, the law would permit you to consider a sentence of death, imprisonment for life without parol and imprisonment for life, are your reservations about the penalties of life without parole or life imprisonment, are these reservations so strong that regardless of the law, the facts and circumstances of the case, you would not impose the penalty or consider the penalty of life without parole or imprisonment for life?

A:      No.

Q:      Could you fairly consider all three of these alternatives if the defendant were found guilty beyond a reasonable doubt of the crime of murder in the first degree?

A:      I could certainly weigh all three.

Q:      And do you believe that those words are synonymous of weigh and consider?

A:      Yes.

Id. at 737-38. Defense counsel then continued questioning Ms. Riggs about other matters, and ultimately passed prospective Juror Riggs for cause. Id. at 745. Later, Myers used his "ninth and

final" peremptory challenge to dismiss Juror Riggs. <u>Id.</u> at 774. He then argued on direct appeal that he was forced to use a peremptory challenge to remove an unqualified juror (Juror Riggs) because the trial judge would not excuse her. <u>See</u> Proposition I in Myers' Brief of Appellant filed in OCCA Case No. F-98-646. Considering Myers' allegations relating to prospective Juror Riggs, the OCCA found:

> It is clear that this prospective juror was willing to consider all three possible punishments for First Degree Murder, and the trial court properly refused to excuse her for cause. *Humphreys*, 1997 OK CR 59, ¶ 3, 947 P.2d at 570.
>
> Further, apparently even Appellant's trial counsel believed the juror to be legally qualified after Judge Posts's follow up questioning because he ultimately passed the juror for cause. The right to challenge any juror for cause is a statutory right which may be waived by the defendant. *Plantz v. State*, 1994 OK CR 33, ¶ 24, 876 P.2d 268, 277, *cert. denied*, 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995)

<u>Myers DA</u>, 17 P.3d at 1027.

  *b.*  *Juror Smith*

  The next prospective juror questioned was Kevin Dale Smith. Tr. Trans. Vol. III at 745. Citing to the following exchange between Smith and the prosecutor concerning proof required for the elements of a crime, Myers argues that Mr. Smith exhibited an inability to follow the law and instructions:

> A: And if you prove four of them [elements] out of five, I mean to be honest with you, I would - - it would be like somebody breaking into a house. You know, if you did prove that he was in the house and actually took the item but didn't prove how he got in the house.
>
> Q: Okay.
>
> A: To me, it wouldn't matter how he got in the house, he did do the crime.
>
> Q: Okay. But there might be some circumstantial evidence that he got in there someway, right?

23

A:      That's correct.

Id. at 757-58. Trying to clear up any confusion, the prosecutor described a lengthy hypothetical situation in which the state fails to prove a necessary element. He then asked Mr. Smith if he understood that, in such a situation, he would have to vote not guilty. Smith responded that he understood. Id. at 758. Defense counsel also questioned Mr. Smith about the prosecution's duty to prove all elements, as follows:

Q:      One of the instructions says, will tell you that you have got to be convinced that the state has proven each and every element of this crime? Do you understand that?

A:      Correct.

Q:      What that means is that if we try this case and if the State of Oklahoma does not prove venue - - venue being that the crime was committed in Rogers County - - it is your obligation as a juror to enter a verdict of not guilty. That's your obligation as a juror.

A:      Yes, sir.

Q:      You have to do that. Do you understand that?

A:      Yes, sir.

Q:      But will you do it?

A:      I mean, I am going to obey by the law.

Q:      I understand.

                    . . .

Q:      Okay.

A:      But my feelings are the other way like I said. But if I have to do it, yes. I mean, I have to do it. If that's the law, I am going to obey by the law.

Q:      And when we say it's the law, we are not saying that if you don't do it, you are going to jail.

We are just saying these are the rules that you have to apply in this case. And this particular question is very important to Karl Myers that you can promise him that with respect to proving the elements, that if they don't prove beyond a reasonable doubt each of those elements, you will come back and you will acquit him, you will find him not guilty. Can you tell me that you will do that?

A:      I promise.

Q:      Even if we are talking about venue, even if we are talking about an element that you think is inconsequential, if they [do not] prove it and the court tells you it's an element, you have to acquit him?

A:      If the court says, yes, that it's an element, then that's correct.

Q:      So what you are promising Mr. Myers is that you will obey the court's instructions?

A:      Yes, sir.

Id. at 769-71.  Defense counsel passed prospective Juror Smith for cause. Id. at 773. At that point, defense counsel used his final peremptory challenge to dismiss prospective Juror Riggs. He argues, however, that the judge's failure to excuse Riggs for cause required him to use his peremptory challenge on her, and left him with alleged partial Juror Smith. The OCCA found "nothing to indicate that Mr. Smith, or any of the jurors who ultimately decided the case were not impartial." Myers DA , 17 P.3d at 1028. This Court agrees that Myers has failed to demonstrate how Mr. Smith was not impartial. A complete review of Juror Smith's *voir dire* answers reveals the error in Myers' assertion that Juror Smith "indicated an inability to follow the law and the instructions." He offers no further argument supporting the allegation of juror partiality.

        *c.      Analysis*

        Under the Sixth Amendment to the Constitution, a defendant has a right to trial by an impartial jury. "One touchstone of a fair trial is an impartial trier of fact- 'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equip., Inc. v. Greenwood,

464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). The proper standard for determining when a prospective juror should be excused for cause is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38 (1980)). On direct appeal, the OCCA rejected Myers' claim, citing Ross v. Oklahoma, 487 U.S. 81 (1988). In Ross, the Supreme Court reiterated the standard set forth in Wainwright, and concluded that any claim that Ross' jury was not impartial must focus on the jurors who ultimately sat, and not the juror who was excused through a peremptory challenge because the judge would not excuse him. Id. at 85-86; see also United States v. Martinez-Salazar, 528 U.S. 304, 305 (2000) (citing Ross and noting that "[s]o long as the jury that sits is impartial, . . . , the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated").

Petitioner maintains that, according to the tests set forth in McDonough and Wainwright, his constitutional right to an impartial jury was violated. However, the OCCA's reliance on Ross is both reasonable and correct. While prospective Juror Riggs stated a preference for the death penalty, she also specifically stated that she would consider all three sentencing options. Thus, the trial court did not violate Myers' constitutional rights in denying defense counsel's motion to excuse Ms. Riggs for cause. See Sallahdin v. Gibson, 275 F.3d 1211, 1223 (10th Cir. 2002). More importantly, nothing in the record supports Myers' claim that Juror Smith, the one who remained to sit on the jury was not impartial.  The Court agrees with the OCCA that no violation of Myers' right to an impartial jury occurred at his trial. Habeas relief shall be denied on this issue.

III.     **Testimony of jailhouse informant (Ground 3)**

In his third ground for relief, Myers claims that the admission into evidence of the testimony of jailhouse informant, Sydney Byrd, denied him a fair trial in violation of the Eighth and Fourteenth Amendments. See Dkt. # 16 at 24-28. Respondent contends that this issue is unexhausted because it was not presented to the state courts for consideration. See Dkt. # 30 at 27. Myers replies that he raised the issue of the reliability of Byrd's testimony on direct appeal, and the OCCA addressed it during its review of Myers' insufficient evidence claim. See Dkt. # 34 at 4. Myers also claims that he raised the issue in an application for evidentiary hearing filed contemporaneously with his direct appeal brief. See Dkt. # 16 at 25.

Contrary to Myers' contention, he did not raise a claim of a constitutionally unfair trial caused by Byrd's testimony on direct appeal in either his brief or his application for an evidentiary hearing. In Proposition III of his brief on direct appeal, Myers asserted that the evidence presented at trial was insufficient to support his conviction for first degree murder. Within that multi-faceted proposition he summarized the evidence, including a two and one-half page analysis of Byrd's testimony. See Brief of Appellant in OCCA Case No. F-98-646, at 48-50. Summarizing Byrd's testimony as support for his insufficient evidence claim on direct appeal differs considerably from the ground three issue Myers now raises in this habeas proceeding.  Transforming a claim into one that is "significantly different" from the claim raised in state court leads the Court to conclude that Myers failed to exhaust his state court remedies. See Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997).

Myers further contends that the OCCA rejected the claim on the merits and it is, thus, exhausted. As part of its rejection of Myers' insufficient evidence claim, the OCCA noted that, "Sydney Byrd, an inmate in the county jail, testified as to conversation with Appellant, in jail,

wherein Appellant admitted killing the victim." <u>Myers DA</u>, 17 P.3d at 1033. No mention is made in the opinion[11] or in Myer's direct appeal brief of how Byrd's testimony may have caused a constitutionally unfair trial. Myers simply criticized Byrd's veracity in a lengthy argument that the evidence presented at trial was insufficient to justify a guilty verdict. He did not argue that his trial was rendered constitutionally unfair as a result of the testimony. <u>See</u> Brief of Appellant filed in OCCA Case No. F-98-646.

Next, Myers asserts that he raised this issue in his direct appeal application for an evidentiary hearing. A careful reading of the application, however, reveals that the only claim relating to witness Byrd was an allegation of ineffective assistance of counsel for failing to properly impeach Byrd. <u>See</u> Application for Evidentiary Hearing on Sixth Amendment Claims, filed September 13, 1999, in OCCA Case No. F-98-646.   Again, Myers did not assert Eighth and Fourteenth Amendment constitutional violations based on the trial court's admission of Byrd's testimony, as he now argues in this proceeding. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995). Exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the "opportunity to pass upon and correct" alleged violations of petitioner's federal rights. <u>Id</u>. (quoting <u>Picard. v. Connor</u>, 404 U.S. 270, 275 (1971)). In this case, Myers argued to the state court that (1) Byrd's testimony was a factor in his insufficient evidence claim, and that (2) his

---

[11] Myers also argues that, because the OCCA "adopted the trial court's credibility determination" in reviewing his sufficiency of the evidence claim, it decided his habeas ground three issue "on the merits." <u>See</u> Dkt. # 34 at 4. The OCCA's factual summary of the trial court's procedure used in deciding whether to allow Byrd's testimony, however, was not a decision on the merits of a claim that Myers' due process rights were violated. <u>See</u> <u>Myers DA</u>, 17 P.3d at 1033 n.5.

trial counsel was ineffective in failing to properly impeach Byrd. Neither of these arguments would have alerted the OCCA that he was asserting an Eighth or Fourteenth Amendment violation for the admission of Byrd's testimony. Thus, Myers' third ground for habeas relief is unexhausted.

The procedural default of Petitioner's habeas claims never before presented to the OCCA would result in the imposition of a bar based on independent and adequate state procedural grounds should Petitioner return to state court to raise those claims in a third application for post-conviction relief. See Cummings v. Sirmons, 506 F.3d 1211, 1223 (10th Cir. 2007) (citing Okla. Stat. tit. 22, §§ 1086, 1089(D)(2)). An "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." Anderson v. Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quoting Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002)). Although the Court could require Myers to return to state court to raise the claim in a third post-conviction application, the OCCA routinely applies a procedural bar to such claims unless the petitioner provides "sufficient reason" for his failure to raise the claim in an earlier proceeding. Okla. Stat. tit. 22, § 1086. Because this claim would be subject to a procedural bar in the state courts, the Court finds it would be futile to require Petitioner to exhaust the claim. See Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (the futility exception is a narrow one, and is supportable "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief"); see also Coleman, 501 U.S. at 735 n.1; Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). Accordingly, because exhaustion would be futile, Myers' ground three claim is not barred by the exhaustion requirement.

However, under the procedural default doctrine, this Court may not consider Myers' claim unless he is able to show cause and prejudice for the procedural default, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  The "cause" standard requires Myers to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, or interference by state officials. Id.  He  must also show "'actual prejudice' resulting from the errors of  which  he  complains."   United States v. Frady, 456 U.S. 152, 168 (1982).   Alternatively, the "fundamental  miscarriage  of  justice"  exception  requires  a  petitioner  to  demonstrate  that  he  is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 495 (1991). He must make "a colorable showing of factual innocence" to utilize this exception. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000). It is intended for those rare situations "where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).

Myers does not attempt to show cause and prejudice for his failure to present this issue to the state courts.  Nor does he argue that a fundamental miscarriage of justice would occur if his claim is not considered. Because Petitioner has failed to offer an explanation for his failure to raise the defaulted claim in state court proceedings, the Court finds that he has failed to demonstrate "cause" sufficient to overcome the anticipatory procedural bar.  In addition, because Petitioner has failed to demonstrate "cause," the Court need not assess the "prejudice" component of the inquiry.

Petitioner's only other means of gaining federal habeas review of his defaulted claim is to assert actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins,

506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ."  Schlup, 513 U.S. at 316.  A petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  Id. at 329. In this case, Petitioner has failed to come forward with such evidence and thus cannot support a claim of  innocence.  In the absence of new evidence supporting a claim of factual innocence, the Court finds Petitioner may not utilize the fundamental miscarriage of justice exception to overcome the anticipatory procedural bar applicable to his claim concerning the testimony of Sydney Byrd.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claim is not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's ground three claim.  Coleman, 501 U.S. at 724. Habeas corpus relief shall be denied as to ground three.

## IV.     Opinion testimony of expert witness (Ground 4)

In his fourth ground for habeas corpus relief, Myers challenges the medical examiner's testimony concerning the rape of Cindy Marzano. Specifically, Myers argues that Dr. Distefano's opinion testimony that Ms. Marzano had been raped was improper and not based on scientific, technical, or specialized knowledge as required by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). See Dkt. # 16 at 30-

31

31.  Myers contends that the use of Dr. Distefano's testimony denied him a fair trial in violation of the Eighth and Fourteenth Amendments to the United States Constitution. See Dkt. # 16 at 29.

Respondent states that the ground four issue is exhausted because Myers raised it on direct appeal. In Proposition IV of his direct appeal brief, Myers argued that Dr. Distefano's opinion testimony regarding rape should not have been admitted into evidence. His argument focused on alleged violations of state statutes and case law, but also mentioned that Dr. Distefano's testimony did not comport with the requirements of Daubert. See Brief of Appellant in OCCA Case No. 98-646 at 53-57. In its rejection of Proposition IV, the OCCA relied on Oklahoma evidentiary law. Myers DA, 17 P.3d at 1031.

As a general rule, petitioners must exhaust available state court remedies before seeking redress via a federal habeas corpus petition. See 28 U.S.C. § 2254(b)(1); Smallwood, 191 F.3d at 1267. In this case, Myers challenged on direct appeal the admission of the questioned witness testimony, but made no specific reference to a due process violation or the United States Constitution. Nevertheless, even if the federal claim is unexhausted, this Court may choose to deny relief on the merits pursuant to 28 U.S.C. § 2254(b)(2) rather than dismiss the petition or hold it in abeyance while Myers returns to state court to exhaust his claim. See Rose v. Lundy, 455 U.S. 509, 510 (1982) (instructing a district court to dismiss without prejudice and allow the petitioner to refile once the claims are exhausted); Rhines v. Weber, 544 U.S. 269, 277 (2005) (in certain circumstances the court can decline to dismiss the matter, but issue a stay and abeyance of the petition while petitioner exhausts his state court remedies). The theory behind addressing the merits is that even if a petitioner fails to exhaust an issue it might not be worth his time to exhaust in state court and then re-file the habeas petition if the claim is patently without merit. See Moore v. Schoeman, 288 F.3d 1231, 1235

(10th Cir. 2005).  In this case, the Court finds that Myers' fourth ground for relief should be denied on the merits, notwithstanding any question about exhaustion.

"In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'"  Maes v. Thomas, 46 F.3d 979, 987 (10th Cir.1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint."  Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (*en banc*)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice."  United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted).

Thus, Myers' ground four claim challenging the admission of portions of Dr. Distefano's testimony is not cognizable in this habeas corpus proceeding unless he demonstrates that the ruling rendered his trial fundamentally unfair. Myers specifically complains of Dr. Distefano's answers during the prosecution's redirect examination:

Q:     Okay, Doctor, from your observations during the viewing, autopsy, and investigation, were you able to draw any conclusions as to or develop any opinion that would suggest this individual [Cindy Marzano] was raped?

A:     Well, I think that looking at this case in its overall context, I think that the things that are present here are suggestive, that the person was both raped and killed.

Q:     And what are those things?

A:     Well, the finding of sperm is significant in indicating the sexual act occurred. The finding of the multiple injuries, all be it [sic] superficial, still suggested a struggle or altercation took place. The circumstances of a person who leaves work one evening, and some hours later is found dead in the river. So I think if you put all of that together that, to me, suggests that scenario.

33

Tr. Trans. Vol. V at 1410. On recross examination the defense attorney followed up on this line of

questioning:

> Q:    Now, in your testimony on redirect just now, for the first time in this case, both dating back to when you testified at the preliminary and then again yesterday and today, you testified that these injuries may be suggestive of rape. That's never been mentioned before in this case, has it, by you or to you as a witness; is that correct?

> A:    I believe that's right.

> Q:    Okay. Now then, when you say they are suggestive of rape, you don't mean to imply or tell us, as a medical examiner, that you have made a conclusion or that these are conclusive of rape; is that correct?

> A:    Well, what I would say is that in my -- in the overall evaluation of this case and with respect to what I think happened to this person, that is my opinion. Now, it being my opinion does not mean that I am saying to the jury that there is scientific evidence that reaches a degree of certainty with that respect.

Id. at 1414.

Under Oklahoma law "expert witnesses can suggest the inference which jurors should draw

from the application of specialized knowledge of the facts." Romano v. State, 909 P.2d 92, 109 (Okla.

Crim. App. 1995). Further, "[t]estimony in the form of an opinion or inference otherwise admissible

is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Okla.

Stat. tit. 12, § 2704. Dr. Distefano explained why he inferred that the presence of semen, body

wounds, and situational facts led him to believe that the victim had been raped. Such testimony is not

barred by Romano.  "An expert may express an opinion based on factual evidence provided by

others." Cannon v. Mullin, 383 F.3d 1152, 1162 (10th Cir. 2004) (citing Okla. Stat. tit. 12, § 2703).

On recross examination, defense counsel elicited an admission from Dr. Distefano that his opinion

did not mean, with scientific certainty, that the victim had been raped. The Court finds no

constitutional error in the opinion evidence offered by this witness.

Finally, the Court finds that Myers' reliance on <u>Daubert</u> is misplaced. First, <u>Daubert</u> establishes guidelines for federal district courts to use in deciding whether new scientific or technical evidence should be admissible. Second, <u>Daubert</u> specifically addresses expert opinion testimony which might not necessarily be based on science, noting:

> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

<u>Daubert</u>, 509 U.S. at 592 (internal citations omitted). The Court finds that admission of Dr. Distefano's testimony concerning the rape of Cindy Marzano did not violate Myers' federal constitutional rights. Myers has failed to demonstrate how the admission of Dr. Distefano's testimony rendered his trial fundamentally unfair. He is not entitled to habeas relief on his ground four claim.

## V.   Insufficient evidence (Ground 5)

As his fifth proposition of error, Myers challenges the sufficiency of the evidence supporting his first degree murder conviction. He complains that his conviction was based upon circumstantial evidence and cannot stand, under Oklahoma law, unless the evidence is inconsistent with any reasonable hypothesis other than guilt. <u>See</u> Dkt. # 16 at 33-34.   He contends that the evidence presented "does not foreclose every reasonable hypothesis of another person's [sic] committing this crime." <u>Id.</u> at 41. This claim was raised on direct appeal and rejected by the OCCA. In resolving Petitioner's challenge to the evidence on direct appeal, the OCCA noted that Myers' case involved both direct and circumstantial evidence. <u>Myers DA</u>, 17 P.3d at 1032, n.4.   Declining to grant relief, the OCCA found:

> In *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204, adopting the test established by *Jackson v. Virginia*, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-2789,

35

61 L.Ed.2d 560 (1979), we established the test for evaluating sufficiency of the evidence as "[w]hether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Credibility of witnesses and the weight to be given their testimony is within the exclusive province of the jury. *Renfro v. State*, 1980 OK CR 6, ¶ 12, 607 P.2d 703, 706. Further, we accept all reasonable inferences and credibility choices which tend to support the jury's verdict. *Washington v. State*, 1986 OK CR 176, ¶ 8, 729 P.2d 509, 510.

Appellant and the victim, Cindy Marzano, were acquaintances. When Ms. Marzano went to work on March 12, 1996, she had no apparent bruises or wounds nor did she receive any during her work shift that afternoon and evening. She did however meet with Appellant while at work and she agreed to meet Appellant after work. She left work at 9:09 p.m. and was at Denny's restaurant with Appellant before 10:00 p.m. Her car was found at the Denny's restaurant. At 11:51 p.m., Appellant was at a convenience store alone, where he washed his truck. Appellant told the clerk he had been at a relative's house. At 12:30 a.m. the victim was found near Highway 33 Landing near the Port of Catoosa floating face down in the water. She died of asphyxiation and was heavily bruised. DNA established that Appellant and the victim had had sexual intercourse.

Appellant gave conflicting stories concerning his whereabouts at the relevant times and first denied any physical contact with the victim and later admitted he had engaged in sex with her, claiming that it was consensual. Appellant gave conflicting stories about whether or not the victim had ever been in his truck. Sydney Byrd, an inmate in the county jail, testified as to conversation with Appellant, in jail, wherein Appellant admitted killing the victim.

Bonnie Makin-Hames, sister to a friend of Appellant, was offered a ride, then taken to a rural area by Appellant and forcefully and sexually assaulted. Appellant threatened her life. Appellant went to prison as a result of the victim's complaint.

Stacy Fain, who lived in Appellant's house was offered a ride to go to Wal-Mart and instead was taken to a rural area and sexually assaulted. Her life was also threatened by Appellant. Appellant was investigated but no criminal charges were filed.

Patricia Curry testified that shortly after the Marzano murder, Appellant bragged that women were easily disposed of at Rocky Point (near where the victim was found).

We find that all of the evidence, taken in the light most favorable to the State, supports the jury's verdict.

Myers DA, 17 P.3d at 1032-33 (internal footnotes omitted).

36

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," Id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority remains unsettled as to "whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply." Hamilton v. Mullin, 436 F.3d 1181, 1194 (10th Cir. 2006). Under either standard, Myers' claim in this case fails.

In examining Myers' sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). When evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). The standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004).

Under AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).  The Court must consider all the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn from it. See United States v. Hager, 969 F.2d 883, 887 (10th Cir.1992) (citing United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir. 1986), *abrogated on other grounds by* Bailey v. United States, 516 U.S. 137 (1995)). The evidence "must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir. 1990). Significant to Myers' argument, circumstantial evidence alone may be sufficient to support a conviction. See Hager, 969 F.2d at 888. Further, the circumstantial evidence required to support a verdict need not exclude every reasonable hypothesis other than guilt. Id. (citing United States v. Alonso, 790 F.2d 1489, 1493 (10th Cir.1986)). It "must only reasonably support the jury's finding of guilt beyond a reasonable doubt." Id. (quoting United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir.1991)). Nonetheless, a conviction may not be sustained if it resulted only "from piling inference on top of inference" from the evidence. See United States v. Horn, 946 F.2d 738, 741 (10th Cir.1991) (citing Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)). All reasonable inferences and credibility choices are made in favor of the jury's verdict. United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982). A jury has the discretion to accept or reject whatever evidence it chooses. Hager, 969 F.2d at 888. The credibility of witnesses and weight of their testimony are for the jury alone.  Id. (citing United States v. Leach, 749 F.2d 592, 600 (10th Cir. 1984)).

In resolving Myers' challenge to the sufficiency of the evidence on direct appeal, the OCCA did not apply a previously used state-law standard of review in cases based solely on circumstantial

evidence, considering whether the evidence "tends to exclude every reasonable hypothesis [other] than guilt." Myers DA, 17 P.3d at 1032 n.4. Instead, the OCCA correctly applied the Jackson standard, as adopted in Spuehler. Myers argues that the OCCA should have applied the standard requiring proof "to exclude every reasonable hypothesis except that of guilt." Dkt. # 16 at 34. Myers contends that when the OCCA applied the Jackson test, it was a violation of his due process rights. However, it is not the role of this Court to ensure that the OCCA correctly applied state law. Estelle, 502 U.S. at 67-68 ("[F]ederal habeas corpus relief does not lie for errors of state law."). This Court must enforce federal constitutional law, and Jackson clearly provides that the due process guarantee of the federal Constitution imposes a different standard than the "exclude every reasonable hypothesis" standard Myers asks this Court to recognize. See Matthews v. Workman, 577 F.3d 1175, 1183 n.3 (10th Cir. 2009).

Oklahoma law provides the substantive elements of first degree malice and felony murder applicable to the Jackson standard. See, e.g., Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003); see also Jackson, 443 U.S. at 324 n.16. Under Oklahoma law, "[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Okla. Stat. tit. 21, § 701.7A. "A person also commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission of . . . forcible rape. . . ." The jury in Myers trial was instructed on both theories, and returned a general verdict without specifying whether it found him guilty of malice or felony murder, or both.

39

Petitioner contends the evidence was insufficient to support a malice-murder conviction because the evidence was wholly circumstantial, was weak, and did not exclude every reasonable hypothesis other than guilt. He points to various evidence which supports his hypothesis that someone else, possibly the victim's husband, could have committed the murder. However, the jury in this case had the discretion to accept or reject whatever evidence it chose. The Court specifically rejects any argument by Myers that he is entitled to habeas corpus relief because he can posit other reasonable theories consistent with the circumstantial evidence presented during his trial and for that reason, the evidence was insufficient to support his conviction. The circumstantial evidence required to support a verdict "must only reasonably support the jury's finding of guilt beyond a reasonable doubt." Hager, 969 F.2d at 888 (quoting United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir. 1991)). Applying the Jackson standard, the OCCA concluded that the evidence presented, including physical bruises and wounds on the body of Cindy Marzano, known activities of Ms. Marzano and Myers on the night of the murder, together with the testimony of Bonnie Makin Hames, Stacy Fain, Patricia Curry, and Sydney Byrd, was sufficient to support the jury's verdict. Myers DA, 17 P.3d at 1034. This Court's review of the trial record supports the OCCA's decision. Viewing the evidence in its entirety and, specifically, the evidence remarked upon by the OCCA, in the light most favorable to the prosecution, this Court concludes that the jury could reasonably have found Myers guilty of first degree malice-murder.

Myers next argues that there was no evidence presented to support a first degree rape conviction. Thus, because there was no evidence Ms. Marzano was raped, the felony murder conviction must also fail. See Dkt. # 16 at 40-41. Contrary to Petitioner's argument, the prosecution presented the testimony of Dr. Distefano who opined that the injuries on the victim's body were

consistent with a struggle. When combined with the DNA evidence proving that the victim and Myers had sexual intercourse, this Court agrees with the OCCA that a reasonable jury could have concluded that Myers raped the victim before murdering her. Accordingly, the evidence presented at Petitioner's trial was sufficient to sustain Petitioner's conviction of first degree felony murder.

The Court finds that the OCCA's resolution of Myers' challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, Jackson. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the sufficiency of the evidence for his convictions shall be denied.

## VI.     Prosecutorial misconduct (Ground 6)

In his sixth ground for relief, Myers argues that several of the prosecutor's remarks at both stages of trial deprived him of a fair trial.  Specifically, he raises three claims of prosecutorial misconduct: (1) repeated references to Myers as "Killer Karl";  (2) misleading comments on the evidence in second stage closing arguments; and (3) comments which improperly evoked sympathy for the victim. Myers contends that the prosecutor's misconduct violated his due process rights. See Dkt. # 34 at 10.

Respondent maintains that these averments were raised and adjudicated on direct appeal where the OCCA determined that Myers was not denied a fair trial or due process. See Myers DA, 17 P.3d at 1038. Respondent urges that Myers has not met his burden of proof on this issue and is not entitled to habeas relief under § 2254(d). (Dkt. # 30 at 46). The Supreme Court has prescribed rules that govern Myers' prosecutorial misconduct claims.  Therefore, this Court must determine whether the OCCA's decision on these claims is contrary to such rules. 28 U.S.C. § 2254(d)(1).

41

Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation.  See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion).  However, a prosecutor's remarks can create constitutional error in one of two ways.  First, when a prosecutor's comment or argument deprives a defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.  Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Second, a prosecutor's improper comment or argument which does not deprive a defendant of a specific constitutional right will require the reversal of a state conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process.[12] Donnelly, 416 U.S. at 643, 645.  See also Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999); Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997). Federal law clearly provides that in order to constitute a due process violation the prosecutor's conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding. Donnelly, 416 U.S. at 643.  The complained of remarks or arguments must be

_____

[12] Myers notes that the Constitution "draws a distinction between misconduct which denies a fair trial and misconduct which deprives a defendant of a specific Constitutional right." See Dkt. # 16 at 44. He proceeds to argue that he is claiming deprivation of a specific right, but names only his right to due process. Id. at 46. Myers fails to explain which specific constitutional right, other than due process, warrants the less stringent analysis he cites from Paxton v. Ward, 199 F.3d 1197, 1217 (1999) (noting that a claim of misconduct which deprives a defendant of a specific constitutional right does not require proof that the entire proceeding was unfair).  Thus, this Court will examine whether the prosecutor's comments denied Myers his due process rights and rendered his trial fundamentally unfair, as required by Donnelly and Darden v. Wainwright, 477 U.S. 168, 179 (1986). Cf. Le v. Mullin, 311 F.3d 1002, 1013 n.3 (10th Cir. 2002).

considered in the context in which they were made.  Greer v. Miller, 483 U.S. 756, 765-66 (1987); see also Darden v. Wainwright, 477 U.S. 168, 179 (1986). The Tenth Circuit directs that:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotation omitted).  In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments.  Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing Mahorney, 917 F.2d at 472-73).  This Court has examined the transcripts from the entire state court proceeding, and will apply the principles established by the Supreme Court to Myers' individual instances of alleged prosecutorial misconduct.

   a.     *References to Myers as "Killer Karl"*

Myers first points to the prosecutor's numerous closing argument references to the defendant as "Killer Karl."  The prosecutor's use of the pejorative "Killer Karl" clearly originated from the following trial testimony given by Myers' cellmate, witness Sydney Byrd:

Q:     Okay. So you were in the same cell with him [Myers]?

A:     I was in the same cell with him.

Q:     How many others were in the cell?

A:     I believe there were 11 or 12 other people in the cell.

Q:     Okay. Did Mr. Myers know what you were in there for?

A:     I had told everybody in the cell I was there for killing someone, yeah.

Q:     You didn't tell them any details?

43

A:      No, sir.

Q:      You just told them you were in there for killing someone?

A:      Yes, sir.

Q:      Did Mr. Myers tell you why he was there?

A:      He said he had killed a woman and that his name was Killer Karl.

See Tr. Trans. Vol. VIII at 2175. At this point defense counsel objected that Byrd's testimony was "not responsive to the question." Id. The trial judge sustained the objection and admonished the witness to listen to the question, and answer only what was asked. Id. The testimony continued:

Q:      Did he tell you why he was in the Rogers County Jail?

A:      Yes.

Q:      And what was that?

A:      A murder.

Q:      Okay. Did he say anything else about his case at that time?

A:      He said that -- he asked me if I had seen him on the news. I told him no. He said his name is -- they call him "Killer Karl." And that he had killed -- his exact words were, "I killed a bitch."

Id. at 2175-76. Relying on this testimony, the prosecutor repeatedly referred to the defendant as Killer Karl in his closing arguments. Rejecting Myers' direct appeal claim of prosecutorial misconduct for these repeated references to the defendant as "Killer Karl," the OCCA found:

In Proposition VI, Appellant complains that he was denied due process of law because of prosecutorial misconduct. Witness Sidney Byrd testified that Appellant had introduced himself as "Killer Karl."

Myers argues that the reference was to what the news media called him. The State argues that Appellant preferred to be called Killer Karl. Either conclusion could conceivably be reached by persons hearing the testimony in question. The State's argument was within the range of permissible inferences or deductions arising from the

evidence and was not error. *Holt v. State*, 1981 OK CR 58, ¶ 36, 628 P.2d 1170, 1171; *Glidewell v. State*, 1981 OK CR 39, ¶ 4, 626 P.2d 1351, 1353; *Brown v. State*, 1988 OK CR 49, ¶ 12, 751 P.2d 1078, 1080.

References to Appellant as "Killer Karl" during closing argument were likewise supported by the evidence under the same authorities. Further, Appellant did not object to any of these instances at trial. "This failure to object waives any error on appeal, except those constituting fundamental or plain error." *VanWoundenberg v. State*, 1986 OK CR 81, ¶ 15, 720 P.2d 328, 334, *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Nolte v. State*, 1994 OK CR 81, ¶ 26, 892 P.2d 638, 645.

The repeated use of the reference "Killer Karl" (some 28 times during first stage of closing argument) gives rise to some concern as to the purpose sought to be accomplished by the prosecutor and is not condoned by this Court. However, we find no undue prejudice to Appellant and find no error, much less any plain error. *Tibbs v. State*, 1991 OK CR 115, ¶ 25, 819 P.2d 1372, 1380.

Myers DA , 17 P.3d at 1038.  When reviewed in context of the strength of the prosecution's case the Court looks to determine whether the prosecutor's challenged references to Myers as Killer Karl "plausibly could have tipped the scales in favor of the prosecution." Tillman v. Cook, 215 F.3d 1116, 1129 (10th Cir. 2000). After considering all the evidence and reviewing the transcripts, this Court concludes that the challenged comments, even if improper, did not influence the jury's decision or render his trial fundamentally unfair. The OCCA's decision is not contrary to any clearly established Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

       b.     *Misstating the evidence*

Myers next claims that the prosecutor misstated the evidence during second stage closing argument when he argued that Myers was proud of the nickname "Killer Karl."  Specifically, he objects to the following portion of the prosecutor's second stage argument:

45

There is a reason why, if you think about all the evidence in this case, that he gave himself the nickname of Killer Karl. He is proud of it. He is proud to live outside the norms of society, to live outside the bounds of the law, and he is proud to be a killer.

Tr. Trans. Vol. XI at 3257-258. The OCCA denied relief on this issue, finding:

Appellant complains that the prosecutor misstated the evidence in the second stage closing argument. The prosecutor argued that Appellant was proud of the nickname "Killer Karl." We find this to be a reasonable comment based upon the evidence as discussed above.

Myers DA, 17 P.3d at 1038. A review of Sydney Byrd's testimony confirms that the prosecutor's

argument was not an unfair comment based on the evidence. Myers has not demonstrated that the

prosecutor's argument resulted in a fundamentally unfair proceeding.

Myers also contends that the prosecutor "twisted" the evidence when he made the following

second stage argument:

Well, maybe a felon in possession of a weapon doesn't seem like a big deal compared to some of these other things, but Karl Myers in possession of a weapon I think would be a big deal to Shawn Williams.

See Tr. Trans. Vol. XI at 3269. Myers believes these statements by the prosecutor mislead the jury

because the referenced weapon was not connected to the Shawn Williams case, and this trial did not

concern the death of Shawn Williams. See Dkt. # 16 at 45.  However, a closer reading of this entire

portion of the prosecutor's closing argument reveals that he was arguing support for the continuing

threat aggravating circumstance, as follows:

Well, maybe a felon in possession of a weapon doesn't seem like a big deal compared to some of these other things, but Karl Myers in possession of a weapon I think would be a big deal to Shawn Williams. And so we have all of these crimes that continue and continue and continue. And I submit to you that we have proven this aggravating circumstance that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

Tr. Trans. Vol. XI at 3269. There was substantial evidence demonstrating the existence of the continuing threat aggravating circumstance. This Court is unable to conclude that the prosecutor's reference to a weapon affected the outcome of the jury's sentencing decision.

The OCCA also did not agree with Myers' contentions, finding:

> The prosecutor was referring to the shooting death of Shawn Williams and was not asserting that the gun found in defendant's possession was the same one he used to kill Williams. The prosecutor was simply arguing that possession of any gun by Appellant was not a minor offense. This argument, we find to be within the range of permissible inferences arising from the evidence. Further, there was no objection to these comments by Appellant and error is waived on appeal in the absence of plain error, which we do not find in this case.

Myers DA, 17 P.3d at 1038.  Myers has failed demonstrate that the OCCA's decision was contrary to Supreme Court law or based on an unreasonable determination of the facts presented at trial. He is not entitled to habeas relief on this claim.

    c.    *Evoking sympathy for the victim*

With little supporting argument or federal citations to back up his claim of a constitutional violation, Myers next asserts that the prosecutor improperly asked the jury to imagine what it must have been like for the victim. See Dkt. # 16 at 46, referencing Tr. Trans. Vol. XI at 3260-61, 3263-64.  The OCCA reviewed this claim on direct appeal and found no due process violation, noting that the prosecutor's comments were made with reference to the heinous, atrocious, or cruel aggravating circumstance. Myers DA, 17 P.3d at 1038. Respondent contends that the OCCA properly reviewed Myers' claim and found no due process violation. See Dkt. # 30 at 54.

An analysis of the merits of the claim reveals that Myers' constitutional rights were not violated by the prosecutor's comments during second stage closing arguments. The Court recognizes that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death

47

sentence be, and appear to be, based on reason rather than caprice or emotion." <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977) (plurality opinion). However, it cannot be concluded that the comment in question deprived Myers of a fundamentally fair trial. <u>See Bland v. Sirmons</u>, 459 F.3d 999, 1028 (10th Cir. 2006); <u>Le</u>, 311 F.3d at 1016. Myers has failed to establish how the prosecutor's comment interfered with the jury's ability to judge the evidence fairly. Accordingly, this Court concludes that the OCCA's decision was not contrary to or an unreasonable application of Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This issue does not warrant habeas relief.

**VII.    Improper admission of immunized statement (Ground 7)**

During the second stage (penalty phase) of Myers' trial, the State presented witness Charles Sharp, who served as Sheriff of Cherokee County, Kansas, in the late 1970's and early 1980's (Tr. Trans. Vol. X at 2998-3019). Sharp testified that during his tenure as Sheriff, he investigated the disappearance and murder of Chink Enders (<u>Id.</u> at 2999). Although Myers was not a suspect in the Chink Enders murder, <u>id.</u> at 3017, he was interviewed because he said he had information regarding the murder. Upon receiving immunity from prosecution, <u>id.</u> at 3016, Myers confessed to the murder of Chink Enders. Myers was not prosecuted for the murder because he had been granted immunity.

Myers claims in his seventh ground that the admission of Sheriff Sharp's testimony violated his federal constitutional rights guaranteed by the Eighth and Fourteenth Amendments. Insofar as Myers claims a Fourteenth Amendment due process violation, this issue was raised and rejected on direct appeal. Even though not raised or addressed in state court, Myers' Eighth Amendment claim shall be rejected on the merits as he provides no explanation, argument or authorities to support a claim based on the Eighth Amendment.  28 U.S.C. § 2254(b)(2). This Court will not craft Myers' legal

theories for him. His undeveloped reference to Eighth Amendment violations based on the improper

admission of Officer Sharp's testimony is insufficient to convince the Court that a constitutional

violation occurred.

On direct appeal, Myers argued that admission of Officer Sharp's testimony during second stage

proceedings was a violation of his Fifth[13] and Fourteenth Amendment rights. See Proposition VII,

Brief of Appellant in OCCA Case No. F-98-646. Without specifically identifying what constitutional

right was violated, the OCCA found error "of constitutional magnitude" in the introduction of

testimony concerning Myers' confession to Sheriff Sharp. Myers DA, 17 P.3d at 1034. Citing Chapman

v. California, 386 U.S. 18, 24 (1967), for the proposition that a constitutional error is subject to

harmless error analysis, the OCCA concluded that the error was harmless. Id. at 1034-35. The state

appellate court explained, as follows:

> In Proposition VII, Myers complains that his constitutional rights were violated by the
> improper admission of testimony from State's witness Charles Sharp, Sheriff of
> Cherokee County, Kansas, during the second stage of trial. Sharp testified that Myers
> had confessed that he had murdered Chink Enders in 1979. The sheriff testified that he
> obtained the confession after he promised Myers immunity from prosecution.
>
> Appellant first claims that the promise of immunity from prosecution for the murder of
> Chink Enders prevented the use of the confession, as evidence of an aggravating
> circumstance, during the second stage proceedings of this trial. In the alternative,
> Appellant claims that the confession, made under the promise of immunity, was a
> coerced confession, thus was inadmissible in this proceeding.
>
> A confession made under the promise of immunity cannot be considered a voluntary
> confession.
>
> > To be admissible, a confession must be "free and voluntary: that is, must
> > not be extracted by any sort of threats or violence, nor obtained by any

---

[13] Myers makes no claim in this habeas petition of a Fifth Amendment violation. His only
reference to the Fifth Amendment is found in the reply, within a quote from Cabral v. Hannigan, 5
F.Supp.2d 957 (D.C. Kan 1988). See Dkt. # 34 at 11.

direct or implied promises, however slight, nor by the exertion of any improper influence."

*Brady v. United States*, 397 U.S. 742, 754, 90 S.Ct. 1463, 1471-72, 25 L.Ed.2d 747 (1970), *quoting Bram v. United States*, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897); *see also, Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). This Court has stated that "[A] confession made or induced by promise of reward or benefit ... would be deemed involuntary, and would not be admissible." *Ex parte Ellis*, 1963 OK CR 62, ¶ 18, 383 P.2d 706, 709.

Whether Sheriff Sharp had the authority to grant immunity is not the question here. The issue is whether the promise of immunity was used to obtain the confession. Obviously, this was the result, even though Sharp did not believe that Appellant committed the murder at the time of the promise of immunity.

Clearly, the confession would not have been admissible in a criminal trial against Appellant for the murder of Chink Enders. Similarly, the confession is not admissible during the second stage of a capital murder trial as evidence of an aggravating circumstance. *Pickens v. State*, 1996 OK CR 6, ¶ 12, 910 P.2d 1063, 1068.

Finding error in the introduction of this confession, we must determine whether the error was prejudicial to Appellant. This error is of constitutional magnitude. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967); *Wisdom v. State*, 1996 OK CR 22, ¶ 31, 918 P.2d 384, 393; *see also Hain v. State*, 1996 OK CR 26, ¶ 38, 919 P.2d 1130, 1141-1142, *cert. denied*, 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996) (an error, albeit constitutional, is subject to a harmless error analysis because it was an error in the trial process itself, and not a defect affecting the entire framework of the trial); *see also Arizona v. Fulminante*, 499 U.S. 279, 295, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (a majority of Justices hold that harmless error analysis applies to coerced confessions). The burden rests with the State to demonstrate beyond a reasonable doubt that the illegally obtained statement did not contribute to the sentence of death. *Pickens v. State*, 1994 OK CR 74, ¶ 7, 885 P.2d 678, 682, *overruled in part on other grounds, Parker v. State*, 1996 OK CR 19, ¶ 23, 917 P.2d 980, 986.

This confession was part of the evidence used to prove the continuing threat aggravating circumstance. Along with this confession, the State also presented evidence that Appellant had been convicted of a prior assault with intent to rape, had killed Shawn Marie Williams subsequent to the present crime, and had previously been charged with feloniously possessing a firearm. Even without this confession, there was more than sufficient evidence to support the continuing threat aggravating circumstance. In light of the overwhelming evidence in support of this aggravating circumstance, we find the introduction of the confession was harmless beyond a reasonable doubt, because when viewed in light of all the evidence presented in aggravation, there is no

> reasonable probability the error contributed to the imposition of the death penalty. *Bryson v. State,* 876 P.2d 240, 256-57 (Okl. Cr. 1994), cert denied, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

Myers DA, 17 P.3d at 1034-35. Myers contends that the OCCA did not properly apply the Chapman standard. It is not disputed that Chapman sets forth the clearly established standard for evaluating instances of constitutional error. Pickens v. Gibson, 206 F.3d 988, 996 (10th Cir. 2000). Further, the OCCA correctly articulated the Chapman standard as requiring a determination that the error was "harmless beyond a reasonable doubt." See Chapman, 386 U.S. at 24. Respondent contends that Myers is not entitled to relief on this claim because the OCCA's determination was not an unreasonable application of Chapman.

This Court agrees that admission of Sheriff Sharp's testimony concerning Myers' immunized confession of the Chink Enders murder was error. However, the Supreme Court has held that:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in Chapman, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Fry v. Pliler, 551 U.S. 112, 121-22 (2007). The Fry Court also noted that, "[t]he opinion in Brecht[14] clearly assumed that the Kotteakos standard[15] would apply in virtually all § 2254 cases." Id. at 117. Under the Brecht standard, the Court will grant relief if it finds the error substantially influenced the jury's decision, or if the Court is in grave doubt as to the harmlessness of the error. See O'Neal v.

---

[14] Brecht v. Abrahamson, 507 U.S. 619 (1993).

[15] The Kotteakos standard asks whether an error "had substantial and injurious effect or influence in determining the jury's verdict." Kotteakos v. United States, 328 U.S. 750, 776 (1946).

McAninch, 513 U.S. 432, 436 (1995); Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir. 2006). Relevant factors to be considered in the harmlessness analysis include the importance of the evidence to the State's case, whether the evidence was cumulative, whether there is other evidence corroborating or contradicting the evidence, and the strength of the State's case. Cf. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (listing factors to consider when conducting harmless-error analysis under Chapman). For the reasons that follow, this Court concludes that any error in allowing the admission of Sheriff Sharp's testimony was harmless under the Brecht standard.

As the OCCA noted, there was considerable other evidence, apart from Sheriff Sharp's testimony, to support the continuing threat aggravating circumstance. Further, the jury found the existence of three other aggravating circumstances before recommending a death sentence for Myers. During the second stage, the State incorporated the evidence from the first stage, including evidence of prior sexual attacks on Bonnie Makin and Stacy Fain (Tr. Trans. Vol. X at 2949). The State also introduced evidence implicating Myers in the rape and murder of a second victim, Shawn Marie Williams (Tr. Trans. Vol. XI at 3184), and evidence that Myers had a gun in his possession (Tr. Trans. Vol. X at 3027). This evidence was sufficient to support the jury's finding of the continuing threat aggravator. Accordingly, the Court does not find that Sheriff Sharp's testimony substantially influenced the jury's decision to find the continuing threat aggravator or to recommend a sentence of death for Myers. The Court does not have grave doubts as to the harmlessness of the error. Habeas relief shall be denied on Myers' seventh ground for relief.

## VIII.   Jurors observed Myers in restraints (Ground 8)

In his eighth ground for habeas relief, Myers contends that his due process right to a fair trial was violated when two jurors saw him in handcuffs being brought through the hall and seated at the

courtroom table. This event happened after a lunch break during the second stage of Myers' trial. His

trial attorney moved for a mistrial, which was denied after an *in camera* hearing.[16] Myers argues that

he was prejudiced because the use of handcuffs suggested to the jury that he was dangerous and violent.

The OCCA found that it was error for any of the jurors to see Myers in handcuffs, but the error was

harmless. Citing state case law and Okla. Stat. tit. 22, § 15, the OCCA reasoned:

> Myers was returned to the courtroom after the lunch recess on the second day of the
> sentencing stage of his trial. Approximately two jurors, coming back from lunch and
> passing through the courtroom on their way to the jury room, saw Appellant as his
> handcuffs were being removed.
> . . .
> In this case, it is clear that the correctional officer's actions in bringing a handcuffed
> Myers into the courtroom were unintentional. He had no reason to believe that any
> jurors would be present at that time and he was not acting in conscious disregard of
> Myers' rights or out of a motive to prejudice Myers. Further, the evidence against
> Appellant in the punishment stage of the proceeding was overwhelming. Appellant
> made a timely objection and did not waive any error. Although the error occurred in the
> courtroom, it occurred during lunch break and court was not in session.
> This case is very similar, factually, to *Snyder v. State*, 1987 OK CR 121, 738 P.2d 548.
> In *Snyder*, the jailer brought the defendant into the courtroom in handcuffs and a juror
> who had returned early from lunch viewed the event. We said that "an unintentional
> viewing by members of the jury of a handcuffed defendant while the jury is not

---

[16] The trial court ruled:

> In this case, we are in the fourth week. This defendant was tried at all
> times before this jury without chains or shackles. He had no more
> than necessary restraint coming to and from the third floor of this
> courthouse. He was not at anytime subjected before conviction to any
> restraint or appearance of restraint within this courtroom. The
> restraint that occurred was in the second stage of proceedings. There
> has been no showing and counsel was given an opportunity to put on
> evidence in this regard. No showing of prejudice. No showing it was
> deliberate. Nor was it, as has been in some of the cases, was it a
> deliberate and prolonged incident of him sitting in court with
> restraints or brought in intentionally, and I find those situations
> distinguishable. The motion for mistrial is overruled.

Tr. Trans. Vol. XI at 3156-157.

impaneled in the jury box is harmless error where there is no showing that the defendant suffered prejudice thereby." *Snyder*, 1987 OK CR 121, ¶ 6, 738 P.2d at 550.

Myers DA, 17 P.3d at 1034. The OCCA concluded that any error was harmless beyond a reasonable doubt. Id. Respondent asserts Myers has failed, pursuant to 28 U.S.C. § 2254(d), to establish he is entitled to relief on this issue.

The Supreme Court has recognized on several occasions that, "[C]ertain practices pose such a threat to the 'fairness of the factfinding process' that they must be subject to 'close judicial scrutiny.' Estelle v. Williams, 452 U.S. 501, 503-504, 96 S.Ct. 1691, 1692-1693, 48 L.Ed. 2d 126 (1976)." Holbrook v. Flynn, 475 U.S. 560, 568 (1986). In Deck v. Missouri, 544 U.S. 622 (2005), the Supreme Court held that the Constitution forbids the use of visible shackles during the penalty phase, as well as the guilt phase of a defendant's trial. In the Deck case, decided after the OCCA's decision in Myers' direct appeal, the Supreme Court explained its rationale behind the rule that "courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding." Id. at 633. Although "a criminal defendant has a right to remain free of physical restraints that are visible to the jury," the right is not absolute and "may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." Id. at 628. Judges may exercise their discretion if special circumstances warrant the use of restraints during a trial. Id. at 633.

In this case, according to the OCCA's factual finding and the trial record, Myers was inadvertently observed in handcuffs by two jurors during a lunch break. He was not handcuffed during the trial so the trial court had no discretionary decision to make concerning the restraints. The event occurred outside the trial as part of a "routine security measure" employed by law enforcement when

transporting a defendant from one location to another.[17] See e.g., United States v. Waldon, 206 F.3d 597, 608 (6th Cir.), *cert. denied*, 531 U.S. 881 (2000). Myers has shown no inherent or actual prejudice from the accidental viewing. In this respect, the OCCA's decision was not contrary to or an unreasonable application of clearly established Supreme Court jurisprudence. See United States v. Jones, 468 F.3d 704, 709 (10th Cir. 2006) ("In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial."); United States v. Gayles, 1 F.3d 735, 739 (10th Cir. 1993) ("[W]hen a juror's view of a defendant in custody is brief, inadvertent, and outside the courtroom, prejudice to the defendant is slight."). Myers is not entitled to habeas relief on this claim.

## IX.      Heinous, atrocious or cruel ("HAC") aggravating circumstance (Ground 9)

In his ninth ground for relief, Myers presents a three-prong challenge to the heinous, atrocious or cruel aggravating circumstance. He argues that the aggravator: (1) was unconstitutional as overbroad; (2) was not supported by sufficient evidence in his case; and (3) was not properly defined for the jury. Respondent responds that the claim relating to the improper jury instruction is the only portion of ground nine which has been exhausted in state court. This Court notes, however, that the OCCA briefly addressed all three prongs of Myers' argument.

### a.      *Constitutionality of heinous, atrocious or cruel aggravator*

---

[17] During an *in camera* proceeding, testimony was taken from the Tulsa County Sheriff's Department reserve deputy who had transported Myers from the jail to the courtroom on the day in question. See Tr. Trans. Vol. XI at 3044-47. He testified that once Myers was found guilty, he was handcuffed during all transportation between the jail and the courtroom. Further, the handcuffs were removed once Myers was at the defense table. Id. at 3045.

In the introduction to his ground nine argument, Myers claims that the heinous, atrocious or cruel aggravating circumstance was not properly limited as required by Maynard v. Cartwright, 486 U.S. 356 (1988). On direct appeal, the OCCA rejected this claim, stating:

> We held in Cannon v. State, 1995 OK CR 45, ¶ 43 & n.54, 904 P.2d 89, 105 & n.54, that the aggravating circumstance "especially heinous, atrocious, and cruel" as limited by this Court is not unconstitutional for vagueness.

Myers DA, 17 P.3d at 1037. Because the constitutionality of aggravating factors is a question of law, Myers must demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. See United States v. McCullah, 76 F.3d 1087, 1107 (10th Cir. 1996); 28 U.S.C. § 2254(d)(1). He has failed to meet this burden. The Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous, atrocious or cruel aggravator in Workman v. Mullin, 342 F.3d 1100, 1115-116 (10th Cir. 2003), finding:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, see, e.g., Romano v. Gibson, 239 F.3d 1156, 1176 (10th Cir. 2001); Thomas v. Gibson, 218 F.3d 1213, 1226 (10th Cir. 2000); Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000); Moore v. Gibson, 195 F.3d 1152, 1175-76 (10th Cir. 1999); Smallwood v. Gibson, 191 F.3d 1257, 1274 (10th Cir. 1999); Hooks v. Ward, 184 F.3d 1206, 1239-40 (10th Cir. 1999); Foster v. Ward, 182 F.3d 1177, 1194 (10th Cir. 1999); Duvall v. Reynolds, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from Thomas expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in Medlock. See generally Thomas, 218 F.3d at 1229 n.17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); Medlock, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating

circumstance] would not have the discretion-limiting effect required by [the Eighth Amendment].") (Lucero, J., concurring).

Oklahoma, however, has limited application of the aggravating circumstance to only those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987). This limitation was included in the jury instructions in Workman's case. ROA Criminal Appeal, Original Record at 98, Instruction No. 3 penalty phase ("The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."). We have specifically found Oklahoma's new formulation to be constitutional since this limiting language was enacted. Hatch v. State, 58 F.3d 1447, 1468-69 (10th Cir. 1995); see also Duvall, 139 F.3d at 793.

Workman, 342 F.3d at 1115-116. Tenth Circuit precedent forecloses Myers' argument that Oklahoma's heinous, atrocious or cruel aggravator is not properly limited under the Constitution. See also Brown v. Sirmons, 515 F.3d 1072, 1091 (10th Cir. 2008). Habeas relief shall be denied on this portion of ground nine.

     b.     *Insufficient evidence to support the heinous, atrocious or cruel aggravator*

The OCCA addressed the sufficiency of evidence presented at trial to support the HAC aggravator during its discussion of an omitted word in the HAC jury instruction, concluding:

Under the facts of this case, we find that there was sufficient evidence to support torture under both definitions ("extreme mental cruelty" or "great physical anguish") and to support "serious physical abuse."

Myers DA, 17 P.3d at 1038. Additionally, in its mandatory sentence review,[18] the OCCA found that, "Sufficient evidence existed to support the finding of the four statutory aggravating circumstances." Id. at 1039. Under 28 U.S.C. §2254(e)(1), the Court must afford the OCCA's factual determinations

---

[18] Under Oklahoma law, the OCCA must conduct a mandatory sentence review in every death penalty case. See Okla. Stat. tit. 21, § 701.13 (requiring the OCCA to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance.").

a presumption of correctness. Boyd v. Ward, 179 F.3d 904, 915 (10th Cir. 1999). The presumption of

correctness can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Myers has

failed to present clear and convincing evidence rebutting the OCCA's finding of sufficient evidence

to support the HAC aggravator.

However, the Tenth Circuit has not yet resolved whether the state court decision should be

reviewed as a legal question, fact question, or mixed question of law and fact. See Boltz v. Mullin, 415

F.3d 1215, 1230 (10th Cir. 2005); Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004); Romano

v. Gibson, 278 F.3d 1145, 1154 (10th Cir. 2002). The Circuit has summarized the considerations as

follows:

> Prior to AEDPA, we reviewed sufficiency of the evidence challenges de novo. *See*
> Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999). Under AEDPA, however, our
> standard of review is not clear. There is precedent in the Tenth Circuit that a sufficiency
> of the evidence challenge is a legal question and other precedent suggesting it is a
> question of fact. *See* Moore, 195 F.3d at 1176-177 (collecting cases on both sides). If
> we treat the issue as a legal determination, we look to 28 U.S.C. § 2254(d)(1) and
> determine whether the state court decision was contrary to or an unreasonable
> application of clearly established federal law. If, on the other hand, it is a factual
> question, we look to § 2254(d)(2) and decide whether the state court decision was an
> unreasonable determination of the facts in light of the evidence presented to the state
> court. Further, § 2254(e)(1) requires us to afford a presumption of correctness to a state
> court's factual findings. Hale v. Gibson, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000); *see
> also* Thomas v. Gibson, 218 F.3d 1213, 1227 (10th Cir. 2000) (using formulation and
> finding evidence insufficient to support aggravator); Medlock v. Ward, 200 F.3d 1314,
> 1321 & n.6 (10th Cir. 2000) (using same formulation and finding evidence sufficient
> to support aggravator); Moore v. Gibson, 195 F.3d 1152, 1176-177 (10th Cir. 1999)
> (same). Thus, if we treat the issue as a legal determination under § 2254(d)(1) we ask
> whether the state court decision was contrary to or an unreasonable application of the
> "rational factfinder" standard. On the other hand, if we treat the issue as a factual
> determination under § 2254(d)(2) and (e)(1) we ask whether Fields has rebutted the
> presumption of correctness by showing, by clear and convincing evidence, that the state
> court's decision was an unreasonable determination of the facts.
>
> We have held, however, that it is possible to avoid deciding what standard of review
> applies when the petitioner's claims are clearly meritless under either standard. *See*
> Hale, 227 F.3d at 1335 n.17 ("In this case, however, we do not determine which is the

more appropriate analysis because Hale's claim lacks merit under either standard of review.") Here, too, we follow this approach because we believe that under either of these highly deferential standards Fields's claim fails.

Fields v. Gibson, 277 F.3d 1203, 1220-21 (10th Cir. 2002). As in Fields, Petitioner's claim fails under

either standard. As noted above, Myers has failed to rebut the OCCA's factual determination by clear

and convincing evidence. Accordingly, this Court finds the OCCA's decision was not an unreasonable

determination of the facts in light of the evidence presented.

In analyzing whether the OCCA's decision was a correct legal determination, the "appropriate

standard of review is the 'rational factfinder' standard established in Jackson v. Virginia, 443 U.S.

307." Lewis v. Jeffers, 497 U.S. 764, 781(1990). The relevant habeas question under the Jackson

standard is to ask whether, "after viewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the [aggravating circumstance]

beyond a reasonable doubt." Jackson, 443 U.S. at 319; Lewis, 497 U.S. at 782 (considerations also

apply to habeas review of state court's finding of aggravating circumstances). This standard "gives full

play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at

319. The Tenth Circuit has emphasized that, under Jackson, "review is 'sharply limited' and a court

'faced with a record of historical facts that supports conflicting inferences must presume - even if it

does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor

of the prosecution, and must defer to that resolution." Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir.

1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)).  This Court's review is limited to

deciding whether the OCCA's decision -- that there was sufficient evidence to support a jury's finding

of the HAC aggravator -- was contrary to or an unreasonable application of <u>Jackson</u>. 28 U.S.C. §

2254(d)(1); <u>Spears v. Mullin</u>, 343 F.3d 1215, 1238 (10th Cir. 2003).

When applying the <u>Jackson</u> standard, this Court looks to Oklahoma law to determine the

"substantive elements" of the aggravating circumstance. Under Oklahoma law, the HAC aggravator

is properly found when the murder was "preceded by torture or serious physical abuse." <u>Medlock</u>, 200

F.3d at 1321.  The OCCA has determined that physical abuse requires evidence of conscious, physical

suffering. <u>Romano v. Gibson</u>, 239 F.3d 1156, 1171 (10th Cir. 2001); <u>see</u> <u>also</u> <u>Powell v. State</u>, 906 P.

2d 765, 779-80 (Okla. Crim. App. 1995) (recognizing that it is critical for the State to prove the

victim's conscious physical suffering before death); <u>Spears v. State</u>, 900 P.2d 431, 443 (Okla. Crim.

App. 1995). According to the OCCA:

> To prove a murder was especially heinous, atrocious or cruel, the State
> must introduce competent evidence indicating the victim's death was
> preceded by torture or serious physical abuse, which may include the
> infliction of either great physical anguish or extreme mental cruelty.
> *Perry v. State*, 893 P.2d 521, 533-34 (Okl. Cr.1995); *Booker v. State*,
> 851 P.2d 544, 548 (Okl.Cr.1993); *Battenfield v. State*, 816 P.2d 555, 565
> (Okl.Cr.1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d
> 632 (1992). To support a finding of serious physical abuse, the State
> must show the victim endured *conscious* physical suffering prior to
> death. *Stafford v. State*, 832 P.2d 20, 23 (Okl.Cr. 1992). As we stated in
> *Perry*, 893 P.2d at 534, it is critical the State prove the victim
> consciously suffered prior to death. Prosecutors have proved this
> aggravator by introducing evidence the victim suffered numerous
> defensive wounds indicating that the victim was conscious and
> attempted to fight off her attacker; statements from the defendant
> indicating the victim consciously suffered serious physical abuse or
> extreme mental cruelty prior to death; witness testimony that the victim
> was alive and conscious at the time the physical abuse was inflicted; or
> medical evidence that the victim was conscious during the infliction of
> serious physical injury. <u>Id.</u> and cases cited therein.

<u>Powell v. State</u>, 906 P.2d 765, 779 -80 (Okla. Crim. App. 1995) (emphasis in original).

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel' aggravator a mechanical procedure." Robinson v. State, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." Id. Therefore, the Court must focus its inquiry on the particulars of this case, rather than this case's similarity to another, to resolve the sufficiency of the evidence claim supporting the "heinous, atrocious or cruel" aggravating circumstance. See id. While evaluating the particular evidence introduced at Myers' trial, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)).

In Myers' case, the jury's resolution of the evidence is clearly within the bounds of reason. The jury heard testimony from the investigator who had been at the crime scene that the victim's blouse and bra had been pulled up over her breasts. Tr. Trans. Vol. IV at 1066. Further, she had a large bruise on her forehead and lacerations across the bridge of her nose. Her upper and lower lip were split. There was a large bruise on her upper left arm and a bruise on her neck. There was a red abrasion between her shoulder blades. Id. at 1067. The medical examiner confirmed these marks on Cindy Marzano's body, among others, and testified that all of the injuries occurred while Ms. Marzano was alive and "within a time frame that no healing" had yet occurred. Tr. Trans. Vol. V at 1323. He also testified that the physical injuries were consistent with his conclusion that she was involved in a physical altercation before death. Id. at 1324. Under the "rational factfinder" test of Jackson, viewing all evidence and drawing all reasonable inferences in the light most favorable to the prosecution, the jury's finding of the HAC aggravator in Petitioner's case was reasonable. The evidence presented at Petitioner's trial

was sufficient to fall within Oklahoma's narrowed scope of the heinous, atrocious, or cruel aggravator.

Here, the OCCA concluded that the evidence supported extreme mental cruelty, great physical anguish,

and serious physical abuse of Cindy Marzano. Petitioner's only rebuttal to this conclusion by the

OCCA is to make the conclusory statement that sufficient evidence to support the finding of the HAC

aggravating circumstance was not presented to the jury. See Dkt. # 16 at 57. This Court concludes that

the OCCA's decision regarding sufficiency of the evidence was not an unreasonable application of the

Jackson standard of review. Petitioner is not entitled to habeas corpus relief on this issue.

        c.      *Improper instruction on heinous, atrocious, or cruel aggravating circumstance*

      Myers next argues that his constitutional rights were violated when the trial court improperly

instructed the jury on the "heinous, atrocious, or cruel" aggravating circumstance by omitting the word

"physical" from the last sentence of the instruction. See Dkt. # 16 at 57. The uniform jury instruction

in effect at the time of Petitioner's trial stated that "especially heinous, atrocious or cruel" is directed

to those crimes where the death of the victim is preceded by torture of the victim or "serious physical

abuse". OUJI-CR 436 (First Edition).

      Instruction number 33, as read to the jurors in Myers' trial, stated:

> As used in these instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

> The phrase "especially heinous, atrocious or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious abuse.

See O.R. Vol. III at 555 (emphasis added). Myers argues that the phrase "serious abuse" does not

comply with the mandates of Maynard v. Cartwright, 486 U.S. 356 (1988) (requiring the instructions

to limit and channel the jury's attention). He claims the modified phrase lessens the standard required

by the Supreme Court for aggravating circumstances used in death penalty cases. Respondent contends that the omission of the word "physical" from the last sentence in the instruction did not destroy the narrowing function of the instruction.

The state appellate court adjudicated this error on the merits. Citing numerous previous state cases where the same instruction omitted the word "physical" from the "serious physical abuse" phrase, the OCCA determined in Myers' appeal that there was no error. Myers DA, 17 P.3d at 1037. The OCCA concluded that the term "serious abuse" controls the standard of proof, and that term was given to the jury. Further, the Oklahoma appellate court observed that under the facts of Myers' case, there was sufficient evidence presented at trial to support torture under both definitions and to support serious physical abuse. Id. at 1038.

Myers is not entitled to habeas relief from this Court unless the state appellate court's ruling is contrary to or constitutes an unreasonable application of federal law. Williams v. Taylor, 529 U.S. 362, 364 (2000); 28 U.S.C. § 2254(d)(1). Because the OCCA did not directly reference any federal law upon which it relied, this Court will apply the harmless-error standard originally set forth in Kotteakos, 328 U.S. at 776 (1946). The test is whether the incorrect wording in the instruction had "substantial and injurious effect or influence in determining the jury's verdict." Id. at 776. See also California v. Roy, 519 U.S. 2, 3 (1997); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court agrees with the state appellate court's assessment of this issue. The omission of the word "physical" from the last sentence in the "heinous, atrocious or cruel" instruction did not have a substantial and injurious effect or influence in determining the jury's verdict. Further, this precise issue has  been addressed by the Tenth Circuit Court of Appeals on more than one occasion. The Circuit Court has determined that, "despite the omission of the word 'physical' from the instruction, the

63

instruction still performed its required narrowing function and imposed restraint upon the sentencer." Miller v. Mullin, 354 F.3d 1288, 1300 (10th Cir. 2004); Turrentine v. Mullin, 390 F.3d 1181, 1196 (10th Cir. 2004). The OCCA's determination that use of the incorrect wording was not error does not constitute an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1); Miller, 354 F.3d at 1300; Turrentine, 390 F.3d at 1196. Habeas relief on this issue is denied.

## X.   Avoiding lawful arrest aggravating circumstance (Ground 10)

Myers next asserts his constitutional rights were violated because the prosecution submitted insufficient evidence to prove the murder was committed for the purpose of avoiding or preventing a lawful arrest, one of four aggravators found in this case.  Specifically, Myers argues that the "avoid arrest" aggravating circumstance was not supported by a predicate crime apart from the murder itself and there was no evidence of his intent to avoid being arrested. Respondent advises that this issue was raised on direct appeal and rejected by the OCCA. Further, Respondent argues that Myers has failed to establish entitlement to relief under AEDPA standards.

The OCCA acknowledged that to support the finding that the murder was committed for the purpose of avoiding lawful arrest or prosecution the State was required to prove the existence of a separate, predicate crime for which the defendant intended and sought to avoid arrest. Myers DA, 17 P.3d at 1036. Concluding that sufficient facts were presented to support the aggravating circumstance, the OCCA found:

> The evidence established that Appellant and the victim were acquaintances and the victim was beaten and strangled, smothered, or drowned after sexual intercourse with Appellant. The evidence further demonstrated that in the past Appellant had been punished following similar incidents. The cause of death in this case was separate from and not a direct result of the rape.

Id. As discussed earlier, the appropriate standard of review is the rational factfinder test established in

Jackson, 443 U.S. 307 at 319. The relevant habeas question under Jackson is to ask "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." Id.; Lewis,

497 U.S. at 783 (considerations also apply to federal habeas review of state court's finding of

aggravating circumstances).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive

elements of the aggravating circumstance. Under Oklahoma law regarding the avoiding arrest

aggravator, "the focus is on the defendant's intent, whether proved by the defendant's own statement

or through circumstantial evidence." Fox v. Ward, 200 F.3d 1286, 1301 (10th Cir. 2000). Further,

Oklahoma law requires the existence of a predicate crime apart from the murder from which the

defendant sought to avoid arrest or prosecution. McGregor v. State, 885 P.2d 1366, 1385 (Okla. Crim.

App. 1994).

In Myers' case, there was ample evidence from which a rational fact finder could conclude

beyond a reasonable doubt that the aggravating circumstance was present. First, the OCCA noted that

the evidence established that Myers and the victim were acquaintances. Myers does not dispute this

fact. In addition, the testimony revealed that Myers and the victim had agreed to meet for coffee after

she got off work the evening she was murdered. Ms. Marzano was observed having coffee with a man

that evening at Denny's Restaurant where her car was found the next day. Ms. Marzano's body was

found floating in a nearby navigation channel within hours after she had gotten off work. Testimony

revealed that her blouse and bra were pulled up, exposing her breasts, and she had bruises on her

forehead, upper arm and neck. She also had cuts on her nose and lips and an abrasion between her

shoulder blades. The medical examiner testified about other bruises on her legs which she suffered

prior to her death and were consistent with being hit, kicked, or falling against an object. He testified

the injuries likely resulted from a struggle. DNA testing on the spermatozoa found in the victim's

vagina revealed a match with Myers' DNA. Finally, witnesses Bonnie Makin Hames and Stacy Fain

testified about previous incidents of sexual abuse by Myers, for which he was investigated and, in one

instance, convicted. Based on all of the foregoing direct and circumstantial evidence, this Court finds

a rational trier of fact could find that Myers committed the murder of Cindy Marzano to avoid arrest

and prosecution of her rape. Myers has not demonstrated that the OCCA's determination was contrary

to, or an unreasonable application of, Jackson. Because sufficient evidence supports the avoiding arrest

aggravating circumstance, Myers is not entitled to habeas relief on this claim.

## XI.    Continuing threat aggravating circumstance (Ground 11)

Myers asserts in ground eleven that the continuing threat aggravator is unconstitutionally vague.

The OCCA denied relief on this claim in Myers' direct appeal, finding:

> This Court has repeatedly rejected arguments on the unconstitutionality of the "continuing threat" aggravating circumstance and we are not persuaded to alter our prior position. *See Cooper v. State,* 889 P.2d 293, 315 (Okl.Cr. 1995); *Malone v. State*, 876 P.2d 707, 715-16 (Okl.Cr. 1994), and cases cited therein; *Walker v. State*, 887 P.2d 301, 320 (Okl.Cr. 1994), *cert denied*, 516 U.S. 859, 116 S. Ct. 166, 133 L.Ed. 2d 108 (1995).

Myers DA, 17 P.3d at 1036-1037 (quoting Wood v. State, 959 P.2d 1, 15 (Okla. Crim. App. 1998)).

Tenth Circuit precedent forecloses Petitioner's facial challenge to Oklahoma's continuing threat

aggravator as unconstitutional. Sallahdin v. Gibson, 275 F.3d 1211, 1232 (10th Cir. 2002); see also

Medlock, 200 F.3d at 1319 (noting that the Tenth Circuit has repeatedly upheld the facial

constitutionality of the continuing threat aggravator as narrowed by the State of Oklahoma); Nguyen

v. Reynolds, 131 F.3d 1349, 1352-353 (10th Cir. 1997). Petitioner does not make any argument which

compels or permits this Court to disregard the binding precedent. Accordingly, habeas relief must be denied on this issue.

Myers also states in the title to his ground eleven claim that the continuing threat to society aggravating circumstance was not supported by sufficient evidence. He provides no argument to support this claim in the body of his brief, and the Court notes that it was not raised in state court. Although unexhausted, the Court will summarily deny his claim on the merits as Myers presents no argument to allow the Court to analyze the claim. See 28 U.S.C. § 2254 (b)(2).

## XII.    Victim impact evidence (Ground 12)

Next, Myers argues that the victim impact testimony introduced during the trial's second stage was unconstitutionally improper under the parameters established in Payne v. Tennessee, 501 U.S. 808 (1991). At Myers' trial, Cindy Marzano's husband, Mark Marzano provided victim impact testimony on behalf of the murder victim's family.  Specifically, Myers urges that Mr. Marzano's testimony made an implied recommendation in favor of the death penalty when he asked "for justice to be done for Michelle [Cindy] and her children so that they can go on to know that there will be a peace for them as well as their mommy." Tr. Trans. Vol. XI at 3213-14. Myers argues the implied recommendation of a sentence is prohibited by the Eighth and Fourteenth Amendments. See Dkt. # 16 at 68.

If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no *per se* bar. "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne, 501 U.S. at 827. In overruling its own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987) and South Carolina v. Gathers, 490 U.S. 805 (1989), the Supreme Court observed that "assessment of the harm caused by the defendant has long

67

been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm." Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate purposes," the Payne Court concluded that such statements are "evidence of a general type long considered by the sentencing authorities." Id. at 825. Although not constitutionally barred, victim impact statements remain subject to certain restrictions and limitations. Victim impact evidence cannot be "so unduly prejudicial that it renders the trial fundamentally unfair" in violation of the Due Process Clause of the Fourteenth Amendment. Short v. Sirmons, 472 F.3d 1177, 1192 (10th Cir. 2006) (quoting Turrentine v. Mullin, 390 F.3d 1181, 1200 (10th Cir. 2004)). In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit. 21, § 701.10(c) (1992)[19] and Okla. Stat tit. 22, §§ 984, 984.1 (1992).[20]

Myers' challenge to the constitutionality of Mr. Marzano's statement was addressed by the OCCA on direct appeal. Finding no error, the OCCA stated:

> In Proposition IX, Appellant complains for the first time on appeal that certain victim impact evidence was improperly admitted. The only victim impact evidence offered was the written statement of the victim's husband. In a very brief statement, Mr. Marzano told of meeting his wife when she was 18. He related that she had a 13-month-old son, at the time, and he thought she was the most beautiful woman he had ever seen. That she was an "old-fashion country girl, very caring and loving" and "that everyone loved to be around her." He stated that he wanted to share "the rest of my life with [her]." He told of the birth of two daughters and the death of the youngest. He said, "The hardest

---

[19] Section 701.10 (c) of Title 21 provides, "[i]n the sentencing proceeding, . . . the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

[20] Section 984 of Title 22, in effect at the time of Myers' crime and trial, defines "victim impact statements" as "information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Per section 984.1, copies of the victim impact statements are to be made available to the parties.

part of dealing with the death of my Michelle is watching my children grow up without a mother. . . ." He asked for "justice to be done for Michelle and her children."

The evidence properly fits within the strictures of *Cargle v. State,* 1995 OK CR 77, ¶ 75, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), providing a quick glimpse of the victim and "showing how the victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed." *Id.*

. . .

There was no error here, . . . and we further find that the statement was not "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720. We find no error in the victim impact evidence offered in this case.

Myers DA,  17 P.3d at 1035-36.

Relying on Oklahoma case law, Oklahoma statutes, and Supreme Court law, the state appellate court found nothing unconstitutional about the victim impact evidence introduced through Mark Marzano. The Cargle case applied the rule of law established by the Supreme Court in Payne v. Tennessee, 501 U.S. 808 (1991).  In Cargle, the OCCA found the challenged victim impact statement "goes to the emotional impact of [the victim's] death" with no explicit testimony "as to the financial, psychological or physical effects of the crime on his family." Cargle, 909 P.2d at 830. Nonetheless, the OCCA concluded that the Cargle errors were harmless beyond a reasonable doubt because, independently of the victim impact evidence, there was sufficient evidence to support the four aggravating circumstances. Id. at 835. In rejecting this claim on habeas corpus appeal, the Tenth Circuit concluded that the OCCA's decision in denying relief on this ground was not an unreasonable application of federal law. Cargle v. Mullin, 317 F.3d 1196, 1224 (10th Cir. 2003) (granting relief on other grounds).

It is clear that Mark Marzano's victim impact testimony was properly admitted and did not violate Myers' constitutional rights to a fair trial. See Turrentine, 390 F.3d at 1201 (finding the husband's request in his victim impact statement to "let justice be done" was not so inflammatory as to

render the sentencing proceeding fundamentally unfair).  The OCCA's resolution of this issue was not

an unreasonable application of <u>Payne</u>.  Myers fails to qualify for relief under AEDPA on this claim. 28

U.S.C. § 2254(d).

**XIII.   Ineffective assistance of trial and appellate counsel (Ground 13)**

In ground thirteen of the original petition (Dkt. # 16 at 72), Myers claims that he was denied his

Sixth Amendment guarantee of effective counsel because his trial attorney failed to investigate and

present compelling mitigation evidence. He asserts that because his trial counsel conducted no

investigation his jury did not hear evidence concerning his life of poverty, mental retardation, organic

brain damage from exposure to lead, and blunt force injury. <u>Id.</u> at 73. He also claims his direct appeal

counsel was ineffective because he "had the same obligation to investigate and present these matters for

review" by the OCCA and the federal courts. <u>Id.</u> at 82. The issue described in Myers' ground thirteen

was not presented to the OCCA on direct appeal or in his first application for post-conviction relief.[21]

As anticipated by Myers, <u>id.</u> at 84, Respondent points out that this ground thirteen claim is unexhausted,

and would be procedurally barred if raised in a new state post-conviction proceeding (Dkt. # 68 at 92).

Myers argues that the claim is being exhausted through a second post-conviction proceeding in state

court, and any procedural bar argument can be overcome because the OCCA's procedural rules are not

applied regularly, consistently and even-handedly. Dkt. # 16 at 85.

---

[21] On direct appeal, Myers claimed his trial counsel was constitutionally ineffective for failing to object or move to suppress the admission of certain evidence. <u>See</u> Brief of Appellant in OCCA Case No. F-98-646, at 99. Myers also filed an application for an evidentiary hearing on his counsel's alleged failure to fully and properly impeach witness Sydney Byrd. <u>See</u> Application for Evidentiary Hearing on Sixth Amendment Claims in Case No. F-98-646. In his first post-conviction proceeding Myers raised a claim concerning the adequacy of both trial and appellate counsel's extra-record investigation. <u>See</u> Original Application for Post-Conviction Relief in OCCA Case No. PCD-2000-516, at 24. Upon review of that claim, however, it is clearly related to Myers' direct appeal request for an evidentiary hearing on trial counsel's handling of witness Sydney Byrd. <u>Id.</u> at 25.

On November 2, 2002, Myers filed a second application for post-conviction relief in OCCA Case No. 2002-978. Proposition II of the second application incorporated his ineffective assistance of trial counsel claim for failing to investigate and present compelling mitigation evidence. He also alleged his appellate counsel failed to investigate the same issues, and failed to present a claim of ineffective assistance of trial counsel on direct appeal or in Myers' first application for post-conviction relief. The second application included Myers' claim of mental retardation and request for relief pursuant to <u>Atkins.</u> The OCCA remanded the case to the state district court for further proceedings on the mental retardation issue, but denied Proposition II on procedural grounds, finding as follows:

> In proposition two, Myers claims that prior counsel's failure to adequately develop and present available mitigating evidence deprived him of effective assistance of counsel at trial, on direct appeal and in post-conviction proceedings. This issue shall not be considered because it is a claim which could have been raised on direct appeal and in the original application for post-conviction relief. See 22 O.S. 2001, § 1089(D)(8). Myers makes no claim that the factual or legal basis of this claim was unavailable as defined by 22 O.S. 2001, § 1089(D)(9).

<u>See</u> Order Denying, in part, Second Application for Post-Conviction Relief and Granting Evidentiary Hearing, filed in OCCA Case No. PCD-2002-978.

Myers supplemented his ground thirteen ineffective assistance claim in the amended petition filed in this case (Dkt. # 56).   Respondent re-urges his argument that the issue is procedurally barred (Dkt. # 68). In his reply, Myers argues: (1) he raised the issues in his first application for post-conviction relief "in the context of presenting arguments about the systemic inadequacies of appellate representation in Oklahoma"; (2) the claims are not procedurally barred because Oklahoma's procedural grounds are not adequate as they are not consistently applied; (3) he raised the ineffective assistance of appellate counsel claim in his second application for post-conviction relief as cause, excusing his earlier default; and (4) the "miscarriage of justice" exception excuses his procedural default. <u>See</u> Dkt. # 78 at

3-4. He urges this Court to review the merits of his ground thirteen claim of ineffective assistance of trial and appellate counsel *de novo* (id. at 5).

### a.    First application for post-conviction did not include claim

Myers states that he raised an ineffective assistance of trial and appellate counsel claim for failing to present material mitigating evidence in his first post-conviction application (Dkt. # 78 at 3). Specifically, he argues that the claim was included in his Proposition II argument.  Proposition II was entitled "Appellate Counsel's Request for an Investigation and the External Factors Preventing the Development of Claims Based in Whole or Part on Facts Beyond the Appellate Record Preclude the Application of the *Walker* Interpretation of the Scope of Issues Cognizable in Capital Post-Conviction Proceedings." See Original Application for Post-Conviction Relief in OCCA Case. No. PCD-2000-516. The argument set forth in the body of Proposition II focused on the OCCA's jurisprudence related to procedural bar and ineffective assistance of counsel in light of Walker v. State of Oklahoma, 933 P.2d 327 (Okla. Crim. App. 1997), *overruling by statute recognized in* Davis v. State, 123 P.3d 243, 245 (Okla. Crim. App. 2005) (citing to Okl. Stat. tit. 22, § 1089(D)(4)(2004)). Seeking an evidentiary hearing, Myers argued that at the time of his direct appeal, appellate counsel had "claims of ineffectiveness of trial counsel grounded on facts outside the record." Dkt. # 78 at 30. Without providing any factual details about possible mitigating evidence, he claimed that "[a] full and fair evidentiary hearing should be conducted to address direct appeal counsel's material mitigating evidence that was not presented at trial due in part to the ineffective assistance of trial counsel." The OCCA denied Myers' request for an evidentiary hearing. Rejecting Myers' Proposition II claims, the OCCA found:

> In proposition two, Myers argues that a full and fair evidentiary hearing on the adequacy of trial and direct appeal counsel's extra-record investigation; adequacy of resources for such investigation; and whether "the rules, procedures and customs" of this Court adequately appraised direct appeal counsel that extra record investigation was necessary.

> Again, counsel admits that we have denied similar propositions in prior cases. The only specific facts relating to Myers' case, in this proposition, is [sic] the mention of the "Application for Evidentiary Hearing on Sixth Amendment Claims" filed by direct appeal counsel. Apparently, Myers is again claiming that trial counsel was ineffective for failing to investigate the credibility and integrity of the "jailhouse informant." This claim was raised and rejected on direct appeal. Thus the claim is barred by *res judicata*. Myers cites to no evidence that even hints that trial counsel or appellate counsel were ineffective or would have acted differently had they been "adequately" appraised that they needed to be effective advocates for their clients. As before, this claim must fail. *Le*, 1998 OK CR 1, ¶ 16, 953 P.2d at 58.

See Opinion Denying Post-Conviction Relief and Evidentiary Hearing in OCCA Case No. PCD-2000-516, filed February 6, 2001.

Before a claim can be reviewed in this habeas court, it must have been "fairly presented" to the state court. Picard v. Connor, 434 U.S. 270, 275-76 (1971). It is not sufficient that, buried within Proposition II of his first application for post-conviction relief, Myers made a general, unsupported reference to "material mitigating evidence that was not presented at trial" due to ineffectiveness of trial counsel. The detailed argument presented to this Court concerning omitted mitigation evidence was not presented to the OCCA in the first post-conviction proceedings for consideration of an ineffective assistance of counsel claim. Accordingly, the Court does not agree with Myers that the claim should not be procedurally barred because it was presented to the state courts in his original post-conviction application.

      b.    *Adequacy of OCCA's procedural bar on claims raised in second post-conviction*

In Proposition II of his second application for post-conviction relief, Myers claimed that "Prior counsel's failure to adequately develop and present available mitigating evidence deprived [him] of effective assistance of counsel in trial, appeal, and post-conviction proceedings." See Second Application for Post-Conviction Relief filed in OCCA Case No. PCD-2002-978. In the application, Myers presented much of the same argument, evidence and authorities to support his ineffective

73

assistance of counsel claim that he presents in his amended petition under review herein. Disposing of the claim on procedural grounds, the OCCA explained briefly:

> In proposition two, Myers claims that prior counsel's failure to adequately develop and present available mitigating evidence deprived him of effective assistance of counsel at trial, on direct appeal and in post-conviction proceedings. This issue shall not be considered because it is a claim which could have been raised on direct appeal and in the original application for post-conviction relief. See 22 O.S. 2001, § 1089(D)(8). Myers makes no claim that the factual or legal basis of this claim was unavailable as defined by 22 O.S. 2001, § 1089(D)(9).

See Order Denying, in part, Second Application for Post-Conviction Relief, in OCCA Case No. PCD-2002-978, at 3.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court has declined or would decline to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 724; see also Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009); Maes, 46 F.3d at 985; Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The Tenth Circuit has recognized that "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999). A series of Tenth Circuit cases has also affirmed the adequacy of the Oklahoma procedural bar relating to claims not

raised in an initial state application for post-conviction review. <u>Cannon v. Gibson</u>, 259 F.3d 1253, 1266 (10th Cir. 2001) (citing <u>Thomas</u>, 218 F.3d at 1221-222; <u>Medlock</u>, 200 F.3d at 1323; <u>Smallwood</u>, 191 F.3d at 1267-69; <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1097 (10th Cir. 1998)).

Applying the principles of procedural bar to this case, the Court concludes that Myers' claims of ineffective assistance of trial and appellate counsel related to the failure to investigate and present substantial mitigating evidence are procedurally barred.  His claims have been defaulted two (2) times: first, when he failed to raise an ineffective assistance of trial counsel claim on direct appeal, and then, when he failed to raise ineffective assistance claims in his first application for post-conviction relief. As a result, the OCCA applied a procedural bar, based on Myers' failure to raise these grounds on direct appeal or in his first application for post-conviction relief.  That bar would be an "independent" state ground because state law provides "the exclusive basis for the state court's holding."  <u>Maes</u>, 46 F.3d at 985. The procedural bar applied to Petitioner's claims first raised on post-conviction appeal was based on Okla. Stat. tit. 22, § 1089(D)(8-9) and was based on an "independent" state ground.

As to the adequacy of the procedural bar imposed on Petitioner's claims of ineffective assistance of trial counsel, the argument is foreclosed by Tenth Circuit cases recognizing that a procedural bar imposed on a claim brought in a second application for post-conviction relief that could have been but was not raised in a previous application is adequate to bar habeas review of ineffective assistance of counsel claims.  <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1268 (10th Cir. 1999) (citing <u>Moore</u>, 153 F.3d at 1097).  Thus, the procedural bar imposed by the OCCA on Petitioner's claims first raised in his second application for post-conviction relief is adequate to preclude federal review. <u>Sherrill</u>, 184 F.3d at 1175.

      c.    *Ineffective assistance of appellate counsel claim is procedurally barred*

As part of Proposition Two in the second application for post-conviction relief, Myers argued that his appellate counsel was constitutionally deficient. He now contends that the OCCA failed to make a clear finding that his ineffective assistance of appellate counsel claim was procedurally barred, and this Court should review the merits of his ineffective assistance of appellate counsel claim. Myers claims that his appellate counsel's failure to raise an ineffective assistance of counsel claim on direct appeal was the cause of his procedural default. However, in order to constitute cause for a procedural default, an ineffective assistance of appellate counsel claim must be presented to the state courts as an independent claim. See Murray, 477 U.S. at 489. Myers did not present ineffective assistance of appellate counsel (related to the current mitigation issue) as an independent claim in his first application for post-conviction relief.

In his second application, Myers argued that his appellate counsel did not investigate available mitigation evidence and did not raise a claim that trial counsel was constitutionally ineffective for failing to investigate and present such mitigation evidence. See Second Application for Post-Conviction Relief in Case No. PCD-2002-978, at 23-25. However, the Court does not agree with Myers' contention that the OCCA failed to rule on this issue. In its order denying relief on this claim, the OCCA stated specifically that "Myers claims that prior counsel's failure to adequately develop and present available mitigating evidence deprived him of effective assistance of counsel at trial, on direct appeal and in post-conviction proceedings." The state appellate court then noted that the claim "could have been raised on direct appeal and in the original application for post-conviction relief."   Rather than separate the ineffective of trial counsel claim from the ineffective assistance of appellate counsel claim, the OCCA found them both to be barred by procedural rules found in Okla. Stat. tit. 22, § 1089(D)(8-9). As

explained in the preceding section, the procedural bar is both independent and adequate to preclude habeas review.

### d.    *Miscarriage of justice exception to procedural bar*

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433 U.S. 72, 91 (1977). Myers asserts that even if procedurally barred, his ground thirteen ineffective assistance of counsel claims are not barred from federal habeas review because failure to consider the claims would result in a fundamental miscarriage of justice. See Dkt. # 78 at 9. A "fundamental miscarriage of justice" argument requires the petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991) (citing Murray, 477 U.S. at 485).

Citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) as support, Myers argues that the fundamental miscarriage of justice of justice exception also applies to a claim of a capital sentencing error. He contends he is "actually innocent" of a death sentence. The Supreme Court in Sawyer addressed the meaning of "actual innocence" in the capital punishment setting:

> A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. Such claims are of course regularly made on motions for new trial after conviction in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake. In the context of a noncapital case, the concept of "actual innocence" is easy to grasp.
>
> It is more difficult to develop an analogous framework when dealing with a defendant who has been sentenced to death. The phrase "innocent of death" is not a natural usage of those words, but we must strive to construct an analog to the simpler situation

> represented by the case of a noncapital defendant. In defining this analog, we bear in mind that the exception for "actual innocence" is a very narrow exception, and that to make it workable it must be subject to determination by relatively objective standards.

Id. at 340-41. The Court then proceeded to analyze three proposed standards for defining "actual innocence" in a capital punishment setting. Ultimately, the Court adopted the "eligibility" standard of review for "innocent of death" claims followed by the Courts of Appeals for the Fifth and Eleventh Circuits, finding:

> The Court of Appeals in this case [Fifth Circuit Court of Appeals] took the middle ground among these possibilities for defining "actual innocence" of the death penalty, and adopted this test:
>
> > "[W]e must require the petitioner to show, based on the evidence proffered plus all record evidence, a fair probability that a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts which are prerequisites under state or federal law for the imposition of the death penalty." 945 F.2d at 820 (footnotes omitted).
>
> The Court of Appeals standard therefore hones in on the objective factors or conditions that must be shown to exist before a defendant is eligible to have the death penalty imposed. The Eleventh Circuit has adopted a similar "eligibility" test for determining actual innocence. Johnson v. Singletary, 938 F.2d 1166 (1991), cert. pending, No. 91-6576. We agree with the Courts of Appeals for the Fifth and Eleventh Circuits that the "actual innocence" requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error.

Id. at 346-47 (footnote omitted) (emphasis added). Under the Sawyer standard, Myers must show by clear and convincing evidence that but for the alleged constitutional error, no reasonable juror would find him eligible for the death penalty. Id. at 348. However, additional mitigating evidence is not to be considered as part of the test under Oklahoma law. Id. at 347. Similar to Myers' position, the petitioner in Sawyer argued for a standard which would consider aggravating factors and mitigating evidence. Rejecting this argument, the Supreme Court explained:

78

The most lenient of the three possibilities would be to allow the showing of "actual innocence" to extend not only to the elements of the crime, but also to the existence of aggravating factors, and to mitigating evidence that bore not on the defendant's eligibility to receive the death penalty, but only on the ultimate discretionary decision between the death penalty and life imprisonment. This, in effect, is what petitioner urges upon us. He contends that actual innocence of the death penalty exists where "there is a 'fair probability' that the admission of false evidence, or the preclusion of true mitigating evidence, [caused by a constitutional error] resulted in a sentence of death." Brief for Petitioner 18 (citation and footnote omitted). Although petitioner describes his standard as narrower than that adopted by the Eighth and Ninth Circuits, in reality it is only more closely related to the facts of his case in which he alleges that constitutional error kept true mitigating evidence from the jury.

Id. at 343-44. The Supreme Court acknowledged that the standard should include not only the elements

of the crime itself, but the existence of aggravating circumstances as both are used to narrow the class

of defendants eligible for the death penalty. Id. at 344-45. However, the Court rejected a definition of

"actual innocence" of a death sentence that would extend to mitigating evidence, finding:

> But we reject petitioner's submission that the showing should extend beyond these elements of the capital sentence to the existence of additional mitigating evidence. In the first place, such an extension would mean that "actual innocence" amounts to little more than what is already required to show "prejudice," a necessary showing for habeas relief for many constitutional errors. See, e.g., United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).  If federal habeas review of capital sentences is to be at all rational, petitioner must show something more in order for a court to reach the merits of his claims on a successive habeas petition that he would have had to show to obtain relief on his first habeas petition. FN13

>> FN13. If a showing of actual innocence were reduced to actual prejudice, it would allow the evasion of the cause and prejudice standard which we have held also acts as an "exception" to a defaulted, abusive, or successive claim. In practical terms a petitioner would no longer have to show cause, contrary to our prior cases. McCleskey v. Zant, 499 U.S. 467, 494-495, 111 S.Ct. 1454, 1470-1471, 113 L.Ed.2d 517 (1991); Carrier, 477 U.S., at 493, 106 S.Ct., at 2648.

. . . [P]etitioner's standard would so broaden the inquiry as to make it anything but a "narrow" exception to the principle of finality that we have previously described it to be. A federal district judge confronted with a claim of actual innocence may with relative ease determine whether a submission, for example, that a killing was not intentional,

consists of credible, noncumulative, and admissible evidence negating the element of intent. But it is a far more difficult task to assess how jurors would have reacted to additional showings of mitigating factors, particularly considering the breadth of those factors that a jury under our decisions must be allowed to consider.

Id. at 345-46.  Myers' miscarriage of justice argument focuses on the importance of omitted mitigating evidence, rather than the elements of the aggravating circumstances which made him eligible for the death penalty in the first instance. "In a capital punishment case, the petitioner is actually innocent of the sentence if he can show factual innocence of the aggravating factors that render one eligible for the death sentence." Selsor v. Kaiser, 22 F.3d 1029, 1036 (10th Cir. 1994) (citing to Sawyer, 505 U.S. at 346). Accordingly, pursuant to the Sawyer standard, Myers has not demonstrated that he is "actually innocent" of the death sentence under the fundamental miscarriage of justice exception to the procedural default rule.

As a result of Myers' failure to demonstrate "cause and prejudice" or that a fundamental miscarriage of justice would occur if his claims are not considered, this Court is procedurally barred from considering the ineffective assistance of trial and appellate counsel claims raised in ground thirteen.

## XIV.   Mental retardation (Ground 14)[22]

---

[22] Myers raised the mental retardation issue as ground fourteen in his original petition, but the Respondent correctly argued that the claim was unexhausted. See Dkt. # 16 at 86-97 and Dkt. # 30 at 104-106. As noted in the procedural history set forth above, this habeas corpus case was held in abeyance while Myers pursued his mental retardation claim in state court (Dkt. # 36). Upon completion of the state court proceedings, the stay was lifted and Myers was granted leave to amend his petition to include claims related to the state court proceedings (Dkt. # 55). His amended petition, filed on April 21, 2006, included a revised and supplemental ground fourteen. Although the Court considered the arguments in the original petition, the analysis of Myers' ground fourteen claim focuses primarily on the arguments propounded in his amended petition.

Petitioner's fourteenth ground arises from the OCCA's decision affirming a jury verdict following Myers' second post-conviction application in which he raised a mental retardation claim under <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002), and <u>Murphy v. State</u>, 54 P.3d 556 (Okla. Crim. App. 2002), *overruled in part in* <u>Blonner v. State</u>, 127 P.3d 1135, 1139 (Okla. Crim. App. 2006). In ground fourteen, Myers challenges the finding that he is not mentally retarded, and argues that his death sentence is a violation of Supreme Court law established in <u>Atkins</u>. <u>See</u> Dkt. # 56 at 17-49. He claims that his execution would violate the Eighth Amendment ban on cruel and unusual punishment because he is mentally retarded.

On June 20, 2002, the United States Supreme Court rendered its decision in <u>Atkins</u>, holding that executions of mentally retarded criminals constitute cruel and unusual punishment in violation of the Eighth Amendment. The <u>Atkins</u> decision left to the states "the task of developing appropriate ways to enforce the constitutional restriction" that mentally retarded persons are to be categorically excluded from execution. <u>Atkins</u>, 536 U.S. at 317 (citing <u>Ford v. Wainright</u>, 477 U.S. 399, 405, 416-17 (1986)). The State of Oklahoma established criteria for the evaluation of mental retardation in accordance with the <u>Atkins</u> mandate and the clinical definition of mental retardation adopted by the American Association on Mental Retardation ("AAMA"). <u>See</u> <u>Murphy</u>, 54 P.3d at 567. In <u>Murphy</u>, the State of Oklahoma adopted the following definition of mental retardation for individuals who allege they are not death penalty eligible:

A person is "mentally retarded": (1) If he or she functions at a significantly sub-average intellectual level that substantially limits his or her ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others; (2) The mental retardation manifested itself before the age of eighteen (18); and (3) The mental retardation is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication; self-care; social/interpersonal skills;

81

home living; self-direction; academics; health and safety; use of community resources; and work.

Blonner, 127 P.3d at 1139 (citing Murphy). It is the defendant's burden to prove each of the three components in the mental retardation definition "by a preponderance of the evidence at trial." Id. Additionally, in Oklahoma, "no person shall be considered mentally retarded unless he or she has an intelligence quotient of seventy or below, as reflected by at least one scientifically recognized, scientifically approved, and contemporary intelligent [sic] quotient test." Id. The OCCA then adopted procedures to be used in post-conviction for determination whether a defendant is mentally retarded for purposes of prohibiting a death sentence. See Lambert v. State, 71 P.3d 30, 31-32 (Okla. Crim. App. 2003).

The Court regards Myers ground fourteen claim as a challenge to the sufficiency of the evidence.[23] Myers argues that he presented sufficient evidence to prove by a preponderance of the evidence the three prongs of Oklahoma's definition of mental retardation. He asserts that both the jury and the OCCA unreasonably determined the facts in light of the evidence presented at his mental retardation trial. This claim was considered and rejected by the OCCA in its published opinion affirming the jury's decision and denying Myers' second request for post-conviction relief. Myers MR, 130 P.3d

---

[23] The Court recognizes that the traditional Jackson standard for reviewing a sufficiency of the evidence claim does not fit precisely to the situation here because the defendant, rather than the state, has the burden to prove by a preponderance of the evidence that he is mentally retarded. The OCCA stated that, "When the defendant challenges the sufficiency of the evidence following a jury finding that he is not mentally retarded, this Court will review the evidence in the light most favorable to the State to determine if any rational trier of fact could have reached the same conclusion." Myers, 130 P.3d at 267. As in Jackson, this standard respects the province of the jury. While not citing to Jackson, the OCCA mirrored the standard by viewing the evidence in the light most favorable to the state to determine if any rational trier of fact could have found that Myers did not prove by a preponderance of the evidence that he was mentally retarded. Therefore, this Court finds that the OCCA invoked the correct legal standard in analyzing Myers' claim.

at 268. The Court will analyze Myers' ground fourteen claim by addressing the three components of

Oklahoma's mental retardation definition as applied to this petitioner.

a.      *Manifestation before age 18*

Proof of the second prong of the <u>Murphy</u> test is not disputed. The OCCA stated the following

in a footnote:

> Myers met the second *Murphy* requirement that his condition manifested itself before the
> age of 18. He presented evidence that a treating physician, who treated him for a broken
> thumb when he was ten years old, noted an impression of "mental retardation" on his
> chart. Myers also presented evidence that teachers and other children noticed and made
> remarks that he was unlike other children and functioned at a lower level. Myers also had
> an F.S.I.Q. [full-scale intelligence quotient] test score of 66 when he was around six
> years old.

<u>Myers,</u> 130 P.3d at 268 n.12.

b.      *Sub-average intellectual ability and deficits in adaptive reasoning*

The first prong of Oklahoma's mental retardation test examines whether the defendant functions

at a significantly sub-average intellectual level. Myers claims he meets this requirement through his

intelligence quotient ("IQ") scores and other evidence presented through various witnesses. The third

prong requires that a defendant have significant limitations in adaptive functioning in at least two of the

nine[24] listed skill areas. <u>See</u> <u>Murphy</u>, 54 P.3d at 567-68. Myers contends that he proved limitations in

at least three of the skill areas (communication, academics, and community use). <u>See</u> Dkt. # 56 at 42.

As stated by the OCCA, "Whether a person is mentally retarded is a question of fact." <u>Myers</u>,

130 P.3d at 267. The OCCA afforded "great deference" to the jury's verdict, reviewing the evidence in

---

[24] The <u>Murphy</u> definition of mental retardation requires a finding that there are significant
limitation in at least two of the following: communication, self-care, social/interpersonal skills,
home living, self direction, academics, health and safety, use of community resources, and work.
<u>Murphy</u>, 54 P.3d at 567-68.

a light most favorable to the State.  In denying Myers' claim that the jury incorrectly determined he was not mentally retarded, the OCCA summarized the evidence presented to the jury concerning Myers' intellectual level (first prong), and his adaptive functioning limitations (third prong). The appellate court concluded that the evidence supported the jury's verdict, noting:

> [W]e find the record supports the jury's verdict that Myers is not mentally retarded. Myers intellectual ability has been tested throughout his life by use of full-scale I.Q. (F.S.I.Q.) tests, intelligence-screening tests, and partial I.Q. tests. His scores on these various tests ranged from 66 to 88. FN10 His scores on F.S.I.Q. tests ranged from a low of 66 to a high of 77. FN11 His only F.S.I.Q. test scores below seventy occurred once in 1957 and twice in preparation for this litigation of his mental retardation claim. In the district court Myers relied, in part, on these three test scores to show that he functioned at a significantly sub-average intellectual level. The jury, however, was also entitled to consider Myers's test scores above seventy and conclude that he functioned at the higher level. Further, I.Q. tests alone are not determinative of the issue of mental retardation. Murphy I, 2002 OK CR 32, ¶ 31, 54 P.3d at 568.

> > FN10. Myers's testing began when he was around six years old. In 1954, he scored a 73 full scale I.Q. on the Stanford-Binet test, but three years later, in 1957, he scored a 66 full scale I.Q. on the same test. Over ten years later, Myers completed two intelligence-screening tests, scoring a 79 in 1969 and an 88 in 1971.

> > In 1973, Myers scored a 75 full scale I.Q. on the Wechsler Adult Intelligence Scale-revised (WAIS-R) given at the Osawatomie State Hospital in Kansas. In this test, he scored a 64 on verbal I.Q. and a 93 on performance I.Q.

> > One year later, in 1974, Myers scored an 87 on another intelligence-screening test. While incarcerated in Oklahoma, in 1977, Myers scored a 77 on the verbal portion of an I.Q. test given at Eastern State Hospital in Oklahoma.

> > In 1999, Myers scored a 77 full scale I.Q. on the WAIS-R given by Dr. Phillip Murphy, Ph.D. However, the results of this test are questionable because the WAIS-R was obsolete at the time Murphy administered it. The WAIS-R was last revised in 1981 and the WAIS-R III was released in 1997. The WAIS-R III was the standard in the field at the time Murphy administered its out dated predecessor.

> > Two experts tested Myers's F.S.I.Q. in preparation for the litigation of his mental retardation claim. In 2002, Myers scored a 66 full scale I.Q. on the Wechsler Adult Intelligence Scale 3rd edition (WAIS-III) given by his expert, Dr. Ray

Hand, Ph.D, and in 2004, Myers scored a 69 on the same test given by Dr. John Call, the State's expert. During this time Myers also took a brief form I.Q. test administered by Dr. Nancy Cowardin. On this test, he scored in a range between 67-69.

FN11. Myers argues that his F.S.I.Q. scores above 70 were influenced by the "Flynn effect." The "Flynn effect" theory states that results on any given I.Q. test will rise approximately 3 points for every 10 years that the test is in existence.

Other evidence supports the finding that Myers failed to prove by a preponderance of the evidence that he functioned at a significantly sub-average intellectual level and that he had significant adaptive functioning limitations in communication, academics and use of community resources as he alleged. FN12 Many witnesses, both lay and expert, testified about Myers's functional ability and his adaptive functioning. These witnesses established that Myers had held a regular job as a truck driver, and had successfully passed the test for a commercial driver's license allowing him to drive a tractor-trailer rig. He had also worked as a forklift operator in a warehouse, loading and unloading trucks based on bills of lading. That job required him to complete classroom training, proficiency training and pass a written test in order to drive the forklift. He was also able to do some work as a mechanic and worked for a time in an automotive shop. While in prison, Myers learned to read simple material and earned a certificate showing he had learned to weld and fabricate metal.

Myers lived by himself and was able to maintain his home and take care of himself and several animals. Myers assisted in the care of his wife as she was dying of cancer. He was capable enough to follow directions and retrieve needed medication and supplies. After his wife died, Myers managed his own financial affairs, including refinancing his property.

Myers was able to effectively communicate with people. He was able to socialize with acquaintances without difficulty. Myers could understand others, make himself understood, express his wishes and understand the reactions of others. He was able to plan for future events. He was able to mislead people and, when confronted with inconsistencies in his stories, he could conform his story to fit the facts. And there was evidence that Myers negotiated his own grant of immunity with a sheriff in Kansas for a crime he committed there. This record does not support a finding that Myers functions at a significantly sub-average intellectual level or that he suffers from deficits in adaptive functioning. We, therefore, find that any rational jury could have concluded Myers was not mentally retarded as defined in Murphy I.

Myers, 130 P.3d at 267-68 (footnote 12 omitted). Myers argues that the OCCA misunderstood the way

mental retardation is diagnosed, and improperly focused on Myers' strengths, rather than deficits, in

concluding that the jury's verdict was reasonable. See Dkt. # 56 at 41. Myers does not dispute the factual summary of the evidence presented to the jury. Instead, he focuses on the low IQ scores and evidence of his weak adaptive functioning skills[25] to support his argument that the jury and the OCCA erred in concluding he is not mentally retarded. The OCCA considered Myers' claim and determined that a rational trier of fact could have concluded that Myers did not meet his burden demonstrating the existence of these deficits.

Respondent contends that Myers has failed to demonstrate that the OCCA's determination was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented (Dkt. # 68 at 21). Although Myers provides a detailed summary of the evidence presented by him at the mental retardation trial, he has not convinced the Court to ignore the jury's choice of which evidence to credit.

Insofar as the jury considered whether Myers functions at a "significantly sub-average intellectual level," abundant evidence was presented by both the defendant and the State at his mental retardation trial. Myers claims that he demonstrated his sub-average intellectual level through his sub-standard IQ scores,[26] and through additional evidence showing he suffered a life time of sub-average

---

[25] Interestingly, Myers challenges the State's use of lay witnesses to testify about Myers' adaptive functioning skills, but then relies on affidavits from Myers' childhood friend, and various prison cell-mates to bolster his argument that he could not process information or carry on a normal conversation. Dkt. # 56 at 46.

[26] Myers acknowledges that his IQ scores from 1954-2005 ranged from 66 to 77. See Dkt. # 56 at 21. Citing Pickens v. State, 126 P.3d 612, 616 (Okla. Crim. App. 2005), he argues that the OCCA "requires only the showing of a 70 or below score on a contemporary IQ test to prove the existence of sub-average intelligence." Further, he claims that despite a contemporary test score of below 70, the OCCA and the jury incorrectly considered other evidence. His reliance on Pickens for this argument is misplaced, however, because the OCCA was referring to requirements for a preliminary determination whether a defendant is eligible to raise the issue of mental retardation. Id. at n.7

intelligence. The additional evidence included testimony and records showing the effects from a head injury suffered by Myers in a 1953 car accident, early childhood school records from Kansas, hospital records from 1958, school records from his enrollment in Picher, Oklahoma, schools after the age of eleven, and prison records from both Oklahoma and Kansas. The State presented rebuttal evidence showing multiple IQ test scores above 70, and Myers' successes in learning to read and pass various skill tests. Although Myers demonstrated that his intellectual level was below average, a reasonable juror considering all the evidence could have determined that he does not function at a "significantly sub-average intellectual level" which limits his ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others. Murphy, 54 P.3d at 567. His arguments presented to this Court have not demonstrated that the jury made an unreasonable decision, or that the OCCA unreasonably determined the facts in light of the evidence presented.

Finally, Myers' burden was to prove by a preponderance of the evidence that he suffered deficits in at least two skill areas of adaptive functioning. Again, conflicting evidence was presented to the jury, but a reasonable juror could have concluded that Myers did not meet his burden.

The state court reasonably applied the law of Atkins, and the guidelines from Jackson in reviewing the jury's decision. U.S.C. § 2254(d)(1). Further, Myers has not demonstrated that either the jury's or the state court's factual determination that he is not mentally retarded resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Accordingly, Myers' fourteenth ground for relief is denied.

## XV.   Accumulation of errors (Ground 15)

Myers next contends he was denied a fair trial and a reliable sentencing process because of the impact of the accumulation of errors (Dkt. # 16 at 98). Petitioner exhausted this claim by asserting cumulative error on direct appeal. The OCCA denied relief finding no accumulation of errors. Myers DA, 17 P.3d at 1039.

Cumulative error analysis "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hamilton v. Mullin, 436 F.3d 1181, 1196 (10th Cir. 2006) (internal quotations omitted) (citing Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)). However, the OCCA did not engage in cumulative error analysis, instead finding no accumulation of errors. Accordingly, this Court must review Myers' cumulative error claim de novo because the OCCA did not consider in the aggregate the prejudicial effect of individual errors. Malicoat v. Mullin, 426 F.3d 1241, 1263 (10th Cir. 2005).

This Court has reviewed the identified trial errors (ground seven testimony of Sheriff Charles Sharp and ground eight handcuff issue) together to determine if the accumulation rendered Myers' trial unfair. The errors, however, were harmless or non-prejudicial. The Court cannot find under the facts of this case that the cumulative effect of the errors found deprived Myers of a fair trial. See Newsted v. Gibson, 158 F.3d 1085 (10th Cir. 1998); Moore v. Reynolds, 153 F.3d 1086 (10th Cir. 1998); United States v. McKneely. 69 F.3d 1067, 1080 (10th Cir. 1995). Having rejected each of Petitioner's habeas claims, and determined that Myers' rights were not substantially affected by the cumulative effect of any errors, the Court finds Petitioner has shown no cumulative error warranting a new trial.

## XVI.   Myers not competent to be executed (Ground 16)

In ground sixteen, Myers claims he "may be incompetent to be executed at the time an execution date is set." See Dkt. # 16 at 101. Citing Ford v. Wainwright, 477 U.S. 399 (1986), he argues that the United States Constitution forbids execution of insane persons. Id. at 100. Myers acknowledges, however, that this issue is unexhausted and not ripe for review. Respondent agrees that presentation of the claim is premature (Dkt. # 30 at 109). A claim pursuant to Ford can be considered only when the execution is "imminent." See Stewart v. Martinez-Villareal, 523 U.S. 637, 645 (1998). Because Myers' execution date has not been set and is not imminent, his sixteenth ground is premature.

## XVII.  Constitutionality of state procedure to determine mental retardation (Ground 17)

In ground seventeen of the amended petition, Myers presents a variety of constitutional challenges to the state court procedures utilized in resolving his Atkins claim of mental retardation. See Dkt. # 56 at 49-88. In particular, he argues: (1) the OCCA failed to provide a vehicle for challenging the effectiveness of trial and appellate counsel; (2) the OCCA applied an incorrect standard of review of the jury verdict unanimously finding him not mentally retarded; (3) the OCCA allowed the jury to rely on improper tests of Intelligence Quotients; (4) the OCCA unreasonably affirmed the trial court's denial of his motion for a change of venue; (5) the OCCA approved the language in the instruction that Myers' mental retardation must be "present and known" before 18, rather than "manifested" before 18; (6) the jury was not told it did not have to be unanimous in its decision; (7) evidence of Myers' murder of Cindy Marzano was improperly admitted to the jury; (8) the jury was allowed to hear evidence that Myers had committed other crimes; (9) trial counsel provided constitutionally ineffective assistance; (10) counsel failed to investigate Myers' adaptive functioning while he was on death row; and (11) appellate counsel provided constitutionally ineffective assistance. Respondent takes the position that

the claims set out in 1, 2, 3, and 7-11were not presented to the OCCA, and are unexhausted. Insofar as the remaining issues were raised before the OCCA, Respondent contends that Myers has failed to satisfy the AEDPA burden showing the OCCA's adjudication was contrary to or an unreasonable application of clearly established Supreme Court law or was an unreasonable determination of the facts. Myers replies that the OCCA's procedures were not adequate to enforce a procedural bar. He seeks relief from this Court on the merits of his claims.

### a.    Claims reviewed by the OCCA

Under the AEDPA, in order to obtain federal habeas relief on his claims related to the <u>Atkins</u> mental retardation trial, Myers must demonstrate that any claim adjudicated on the merits in state court (1) resulted in a decision that was contrary to or was an unreasonable application of clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)(2). The issues that were raised in the state appeal of his mental retardation trial will be reviewed according to the requirements of the AEDPA.

### 1. Standard of review used by OCCA on appeal (sub-claim 2)

Similar to his ground fourteen claim, Myers contends that he presented sufficient evidence in his state court proceedings to prove his mental retardation, but the OCCA applied an incorrect standard of review to his claim on appeal. Upon careful review of the claim, the Court disagrees with Respondent's contention that this issue is unexhausted. Although Respondent states that the claim is "distinct" from the ground fourteen insufficient evidence claim, he also notes that Myers has presented

no Supreme Court jurisprudence to support his claim. The Court finds that Myers' argument concerning the standard employed by the OCCA in reviewing his insufficient evidence claim supplements his ground fourteen claim, and is not unexhausted. In this supplemental argument, Myers asserts that he is entitled to habeas corpus relief because the OCCA did not apply correct Supreme Court law to his insufficient evidence claim. For the reasons stated in the ground fourteen analysis hereinabove, and the further discussion below, the Court finds that Myers is not entitled to relief on this claim.

Myers correctly observes that the OCCA applied the standard set forth in <u>Jackson</u>, reviewing the evidence presented at his mental retardation trial in the light most favorable to the state.  In <u>Jackson</u>, the Supreme Court held that the standard for inquiry on review of a claim regarding sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319. Further, this standard gives full play to the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and to draw reasonable inferences from the facts. <u>Id.</u> (finding this criterion "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law").

After summarizing its review of the evidence presented at Myers' mental retardation trial, the OCCA held, in part: "We, therefore, find that any rational jury could have concluded Myers was not mentally retarded as defined in *Murphy I*." <u>See</u> <u>Myers MR</u>, 130 P.3d at 268. Myers claims the <u>Jackson</u> standard is inappropriate because the burden was placed on him to prove his mental retardation, and the <u>Jackson</u> standard is only applicable in habeas review when the burden is on the state. He contends that the evidence should be viewed in light of the party bearing the burden of proof, which was Myers, at the post-conviction mental retardation trial. However, Myers fails to provide any Supreme Court

91

authority to support his position.[27] A necessary condition for federal habeas relief is that the state court's decision was contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).  Although the traditional Jackson standard for reviewing a sufficiency of the evidence claim does not precisely fit Myers' situation, he has not cited any clearly established Supreme Court law to satisfy his burden under AEDPA. Myers is not entitled to habeas relief on this issue.

### 2. Denial of motion to change venue (sub-claim 4)

In this part of ground seventeen, Myers contends he was denied a fair mental retardation trial by impartial jurors because of extensive pretrial publicity and the trial court's refusal to grant a change of venue. See Dkt. # 56 at 64. Citing Sheppard v. Maxwell, 384 U.S. 333 (1966) and Irving v. Dowd, 366 U.S. 717 (1961), Myers argues that the OCCA's denial of relief on this issue was contrary to Supreme Court law and "contrary to the facts presented." See Dkt. # 56 at 64. The OCCA held:

> In Proposition III, Myers claims that the district court erred by denying his motion to quash the venire and change venue. At the start of jury selection, Myers moved for a change of venue arguing he could not receive a fair mental retardation trial in Rogers County because of the extensive media coverage of his previous two capital murder trials. The district court denied the motion and advised Myers to renew the motion

---

[27] Myers cites Cooper v. Oklahoma, 517 U.S. 348, 366-67 (1996) for his argument that the OCCA did not comport with fundamental principles of due process in reviewing the evidence presented in the light most favorable to the prosecution. However, even if the OCCA had reviewed the evidence in the light most favorable to Myers, as he argues, (dkt. # 56 at 56-57), the result would not have been different.  Myers met the second Murphy requirement (condition manifested before the age of 18). Taken in the light most favorable to him, a good argument can be made that he satisfied his burden of showing significant limitations in at least two of the adaptive functioning skill areas (third Murphy requirement). However, a preponderance of the evidence did not support his claim that he functions at a "significantly sub-average intellectual level that substantially limits his ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others" (first Murphy requirement). In order for the jury to find Myers mentally retarded he was required to prove all three of the components of the mental retardation definition. Blonner, 127 P.3d at 1139.

should there be evidence of juror bias based on media coverage during jury selection. Myers did renew his motion several times during jury selection arguing that the questioning of jurors about the previous publicity surrounding his murder cases and the number of jurors stating that they knew something about them tainted the entire jury pool. The district court overruled Myers's motions to quash the venire and change venue each time he renewed them. Myers asserts that the district court abused its discretion because the court's repeated denial of his motions deprived him of a fair trial with a fair and impartial jury. FN15

> FN15. The district court noted on the record that less than ten percent of the entire "jury pool" had prior knowledge of the case.

In reviewing this claim on appeal, we evaluate the totality of the circumstances surrounding Myers's mental retardation trial to determine whether Myers was tried before a fair and impartial jury.FN16 *DeRosa v. State*, 2004 OK CR 19, ¶ 20, 89 P.3d 1124, 1135. On appeal this Court focuses not on the jurors who might have been impaneled, but on the jurors who actually were impaneled. *DeRosa*, 2004 OK CR 19, ¶ 21, 89 P.3d at 1135. We review the record to see if the jurors before whom Myers's claim of mental retardation was tried were able to lay aside any prior knowledge or opinions regarding the case, and render a verdict based upon the evidence presented in court. "Because evaluation of juror impartiality is a factual inquiry, based largely upon numerous credibility determinations, this Court will not reverse a denial of a change of venue motion absent a showing of abuse of discretion by the trial court." *Id.* at 1135-36.

> FN16. Myers does not contend that his case is one of the rare cases where media influence was so pervasive and prejudicial that prejudice must be presumed. *See DeRosa*, 2004 OK CR 19, ¶ 19, ¶ 22, 89 P.3d at 1135-36.

The record shows the district court conducted extensive voir dire of prospective jurors regarding their prior knowledge of Myers's cases. Nine potential jurors were removed for cause because they had some prior knowledge. Further, one juror was removed during the trial because she remembered something about the murder cases while listening to the testimony of Mark Marzano, the husband of murder victim Cindy Marzano. None of the jurors who deliberated stated they had any prior knowledge about Myers's murder charges.

"The Sixth Amendment right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial jurors." *DeRosa*, 2004 OK CR 19, ¶ 17, 89 P.3d. at 1134, *citing Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The Irvin court stated:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse

the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases.

*Irvin*, 366 U.S. at 722-23, 81 S.Ct. at 1642.

The record shows the district court carefully conducted jury selection to avoid tainting the entire venire. At no time were the details of the crimes revealed to the potential jurors through the jury selection process. Questions were carefully tailored so that those potential jurors who had prior knowledge could say so without revealing the specific information. The district court exercised extreme care to ensure that those prospective jurors who had prior knowledge did not infect the venire and did not serve. Myers has not shown that the jurors seated in his case were not fair and impartial. Accordingly, we find that the district court did not abuse its discretion in failing to quash the venire and change venue in this case. *See DeRosa*, 2004 OK CR 19, ¶ 33, 89 P.3d. at 1139-40. No relief is required.

Myers MR, 130 P.3d at 269-70.

Myers argues that he should have been granted a change of venue due to pretrial publicity and preconceived prejudice of jurors. His mental retardation trial counsel made several attempts to convince the trial judge that the jury pool was tainted because of their knowledge of his case. However, each potential juror challenged for this reason was removed for cause. One juror (Juror Adair) was removed from service during the trial when she advised the court that she was remembering some of the details of Myers' conviction for murdering Cindy Marzano. See MR Tr. Trans. Vol. VIII at 1771. Myers makes no specific reference to possible impartiality problems with any other venire persons ultimately selected to become jurors. The Supreme Court cases cited by Myers present a much different scenario. In Sheppard, the Court acknowledged that there was "massive, pervasive and prejudicial publicity" that attended Dr. Sheppard's trial, resulting in a deprivation of his due process rights. Sheppard, 384 U.S. at 335. Even before he was arrested, Sheppard was tried in the media and presumed guilty. Likewise, the Irvin defendant's crime was extensively covered by news media in his locality. There were pretrial

media reports that Irvin confessed to several murders. One change of venue was granted, but to an adjoining county whose inhabitants had also been tainted by a considerable amount of negative publicity.

Nothing in the record as provided by Myers suggests that the jury considered anything but the evidence presented in court. In rejecting this claim, the OCCA did not apply the law of <u>Irvin</u> and <u>Sheppard</u> unreasonably to Myers' case, nor did the court base its decision on an unreasonable application of the facts. Myers has not demonstrated that he is entitled to habeas relief on this claim.

### 3. Instruction defining mental retardation (sub-claim 5)

Myers next challenges the jury instruction defining mental retardation. He asserts a violation of his Eighth and Fourteenth Amendment rights. In the mental retardation trial, the trial court gave the following instruction to the jury for determining whether Myers met the legal definition of mental retardation:

> You are advised that a person is mentally retarded if he or she functions at a significantly sub-average intellectual level that substantially limits his or her ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others. Intelligence quotients are one of the many factors that may be considered, but are not alone determinative.

> In reaching your decision, you must determine:

> 1. Is the Defendant a person who is mentally retarded as defined in this instruction?
> 2. Was the mental retardation <u>present and known</u> before the Defendant was eighteen (18) years of age?
> 3. Does the Defendant have significant limitation in adaptive functions in at least two of the following skill areas: communication; self-care; social/interpersonal skills; home living; self-direction; academics; health and safety; use of community resources; and work?

> If you find by a preponderance of the evidence that the answer to each of these questions is yes, then you must find that the Defendant is mentally retarded and so

indicate on your verdict form. If you find that the answer to any of these questions is no, then you must find that the Defendant is not mentally retarded and so indicate on your verdict form.

O.R. Vol. II at 236B in OCCA Case No. PCD-02-978 (emphasis added). Myers argues that the use of the phrase "present and known" in place of the words "manifested itself" is not in compliance with the requirements of Atkins. In the OCCA's decision on appeal of the mental retardation trial, the state appellate court rejected this issue, finding:

> In Proposition I, Myers claims that the district court's instruction that mental retardation must be "present and known" before age 18 violates *Atkins*. Myers argues that the "present and known" language creates a higher burden than the "manifests" language used in *Murphy I*. Myers's counsel objected to the district court giving the instruction adopted in *Murphy I*, now known as OUJI-CR 2d 4-68A (2003 Supp.). Myers proposed the district court drop the "present and known" language in the instruction and substitute "originates before age 18." The district court overruled the objection, denied the request, and gave the instruction adopted by this Court in *Murphy I*. We will not disturb the district court's ruling here unless an abuse of discretion is shown. Williams v. State, 2001 OK CR 9, ¶ 22, 22 P.3d 702, 711.

> Jury instructions are sufficient if, when read as a whole, they state the applicable law. McGregor v. State, 1994 OK CR 71, ¶ 23, 885 P.2d 1366, 1380. As used in this context, the word "manifest" is a transitive verb and the word "known" is an adjective. The *Random House Unabridged Dictionary* defines "known" as perceived or understood as fact or truth; apprehended clearly and with certainty. See "know" & "known" *Random House Dictionary* (2nd ed.1997). It defines "manifest" as "to make clear or evident to the eye or the understanding; show plainly . . . to prove; put beyond doubt or question." See "manifest" *Random House Dictionary* (2nd ed.1997).

> We find that the words "present and known" are words of common everyday understanding that do not require a level of proof above that required to prove that a condition "manifested" itself. "Known" as it relates to the jury instruction used in this case does not require a scientific finding or a medical diagnosis. *See Murphy I*, 2002 OK CR 32, ¶ 31 n.19, 54 P.3d at 567 n.19. The retardation has only to have been perceived or recognized by someone before the defendant reached the age of 18. The court's instruction accurately stated the applicable law and therefore we find that the district court did not abuse its discretion in giving this uniform instruction.

Myers MR, 130 P.3d at 268 - 69.

Myers has not demonstrated that the OCCA's resolution of this issue was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. This claim must fail. The trial court's instruction defining mental retardation was narrowly tailored in response to the Supreme Court's mandates in <u>Atkins</u>. He is not entitled to relief on this claim.

### 4. Verdict form required jury to be unanimous (sub-claim 6)

In this sub-part of ground seventeen, Myers complains that the jury instruction given in his mental retardation trial failed to advise the jurors specifically that unanimity was not required. He claims the trial court erred by denying his request to submit non-unanimous verdict forms to the jury. The OCCA rejected this claim, finding:

> In Proposition II, Myers claims that the district court erred by denying his request to submit non-unanimous verdict forms to the jury. At trial, defense counsel objected to the uniform instructions and verdict forms requiring the jury to return a unanimous verdict. Counsel proposed advising the jury that it could return a non-unanimous verdict and providing it with non-unanimous verdict forms. The district court overruled the objection, denied the request and used the verdict forms adopted in *Lambert*.
>
> Requiring a unanimous verdict on the issue of mental retardation does not violate *Atkins*, *Murphy I*, or *Lambert*. It neither increases the likelihood that a mentally retarded person will be executed nor does it force jurors to vote for a particular position. A unanimous decision is also required by our state constitution in all criminal cases other than misdemeanors. Okla. Const. art. II, § 19. *Lambert* provides a procedure for a jury that cannot unanimously agree that a defendant is mentally retarded. In that instance, the benefit of the doubt goes to the defendant and the district court resentences the defendant to life imprisonment without the possibility of parole. *Lambert*, 2003 OK CR 11, ¶ 5, 71 P.3d at 32. Nothing in *Atkins*, *Murphy I* or *Lambert* requires the jury to be told what happens if it cannot reach a unanimous verdict. This claim is denied.

<u>Myers MR</u>,  130 P.3d at 269 (footnote omitted). Myers points to no language in <u>Atkins</u>, or any other decision of the Supreme Court or the Tenth Circuit, to support his argument that the OCCA's decision

was an unreasonable application of Supreme Court law. Nor has this Court found such case.  Claims of erroneous jury instructions justify setting aside a state conviction only if "the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or is otherwise constitutionally objectionable, as, for example, by transgressing the constitutionally rooted presumption of innocence." Dockins v. Hines, 374 F.3d 935, 938-39 (10th Cir. 2004) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)). Myers has not demonstrated that his trial was rendered fundamentally unfair as a result of the trial court's failure to submit non-unanimous jury forms to the jury. Relief is denied on this issue.

       b.      *Unexhausted issues (exclusive of ineffective assistance of counsel claims)*

In his appeal to the OCCA of his mental retardation trial, Myers challenged the state's procedures and raised the specific issues discussed above: (1) "present and known" language in instruction violated Atkins; (2) non-unanimous verdict forms were not allowed to be submitted to the jury; and (3) it was error to deny a change of venue. See Supplemental Brief of Petitioner in OCCA Case No. PCD-2002-978, filed January 18, 2005. Respondent notes that Myers has not presented the remaining ground seventeen claims to the OCCA for review, and states "Petitioner is not entitled to habeas review of portions of the instant claim [ground seventeen] that he has not presented to the OCCA." See Dkt. # 68 at 22. Further, Respondent requests that the unexhausted claims be dismissed on the merits pursuant to 28 U.S.C. § 2254(b) (allowing this Court to deny relief on the merits, notwithstanding the failure of the applicant to exhaust state court remedies). Respondent provides no argument regarding the merits of the unexhausted issues.  In his reply, Myers does not dispute Respondent's contention that these claims are not exhausted. For the reasons stated below, this Court

98

finds it is most efficient to address and deny the unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b).

### 1. Improper IQ test evidence (sub-claim 3)

Myers contends that he met the sub-average intellectual requirement to prove mental retardation because he had a score of "70 or below" on a contemporary IQ test. Dkt. # 56 at 60.  Citing <u>Pickens v. State</u>, 126 P.3d 612 (Okla. Crim. App. 2005), he confuses the threshold requirement for allowing a mental retardation claim to be pursued under <u>Atkins</u>, with the "sub-average intellectual" prong of the three-part test.[28] No one contests that Myers met the requisite low score on at least one IQ test to allow his mental retardation claim to go forward in the state courts. His complaint, however, that the jury was then allowed to consider evidence of other IQ tests and scores at trial, does not present a constitutional issue. Neither the trial court nor the OCCA violated Myers' constitutional rights by allowing IQ test evidence to be presented that showed a range of scores over the years. This claim is without merit.

### 2. Presentation of evidence of the Marzano murder and other crimes (sub-claims 7, 8)

In sub-part seven, Myers claims that he was denied a fair mental retardation trial because the State presented evidence of his conviction for the murder of Cindy Marzano. He contends this evidence was not relevant to the issue of mental retardation, and confused and prejudiced the jury. Myers does not identify the constitutional right which may have been violated by the introduction of this evidence, nor does he provide any federal authority or citation supporting a constitutional claim.  The Court will not craft Myers' legal theories for him. His undeveloped claim presented in sub-part seven is insufficient

---

[28] In his amended petition, Myers argues "Both Mr. Myers and the Respondent agree Mr. Myers presented an IQ score of under 70. At least two contemporary intelligence tests show Mr. Myers to have sub average intelligence. Based on testing alone Mr. Myers has shown the sub average intelligence prong of the definition of mental retardation has been met." Dkt. # 56 at 61.

to convince the Court that a constitutional violation occurred. Accordingly, habeas relief shall be denied on this portion of ground seventeen.

Myers also asserts that his Eighth and Fourteenth Amendment rights were violated because the State was permitted to introduce testimony at his mental retardation trial showing he had committed other crimes. Specifically, he complains that the jury was made aware of his prior convictions and a grant of immunity from prosecution.

Atkins determined that it was unconstitutional for the State to execute a mentally retarded offender. Although the Supreme Court left to the States the task of developing appropriate ways to enforce this constitutional restriction, it noted that clinical definitions of mental retardation also require significant limitations in adaptive skills such as "communication, self-care, and self-direction." Further, by definition, a mentally retarded person has "diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." Atkins, 536 U.S. at 318. The evidence presented by the State, although partially involving prior criminal activity, was directly relevant to counter Myers' claim of significant limitations in adaptive functioning. The evidence demonstrated the tasks in which Myers participated, his ability to communicate and deceive people, and to plan using logical reasoning. Myers has not shown that the evidence was more prejudicial than probative, or that the admission of the evidence was a violation of his constitutional rights. Habeas relief is denied on this portion of ground seventeen.

> c.   *Ineffective assistance of counsel in state mental retardation proceedings*

Myers' claims related to ineffective assistance of mental retardation trial and appellate counsel have clearly not been reviewed or addressed on the merits by the OCCA. Although Myers attempted to

raise ineffective assistance of mental retardation counsel issues in a third application for post-conviction

(OCCA Case No. PCD-2006-562), the state appellate court found the application was untimely. Citing

Coleman, 501 U.S. at 752 (finding there is no constitutional right to an attorney in post-conviction

proceedings; therefore, there can be no deprivation of effective assistance), Respondent asserts that,

because the mental retardation proceedings were conducted in post-conviction proceedings rather than

direct appeal proceedings, there is no constitutional right to effective assistance of counsel. This Court

disagrees. The OCCA reviewed Myers' mental retardation jury trial proceeding as if it were a direct

appeal. Myers MR, 130 P.3d at 265 ("Though this appeal remains part of Myers's post-conviction case,

errors alleged to have occurred during his jury trial on mental retardation will be reviewed in the same

manner as errors raised on direct appeal from a trial on the merits."). Additionally, in other appeals

following Atkins mental retardation proceedings, the OCCA has reviewed ineffective assistance of

counsel claims pursuant to the standards enunciated in Strickland v. Washington, 466 U.S. 668 (1984).

See e.g., Salazar v. State, 126 P.3d 625, 633 (Okla. Crim. App. 2005) ("To prevail on a claim of

ineffective assistance of counsel, a petitioner must show (1) counsel's representation fell below an

objective standard of reasonableness and (2) a reasonable probability that, but for counsel's error, the

results of the proceedings would have been different." (quoting Strickland, 466 U.S. at 687)). In Myers'

case,  the OCCA clearly acknowledged the gravity of his "Atkins" jury trial, and made certain he was

afforded the same constitutional rights as in his original trial. Viewing the mental retardation trial as an

extension of Myers' second stage punishment proceedings, this Court concludes that Myers was

constitutionally entitled to effective representation of counsel in the mental retardation proceedings.

However, this Court cannot review Myers' ineffective assistance of counsel claims if they were

defaulted in state court on independent and adequate state procedural grounds unless he has

demonstrated cause and prejudice or a fundamental miscarriage of justice. See English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998) (citing Coleman, 501 U.S. at 749-50). Independent state procedural grounds are those that rely exclusively on state law as a basis of decision. Id. In Myers' case, the OCCA declined to review Myers' ineffective assistance of counsel claims entirely on state rule grounds. See Dkt. # 58, attachment 1 (finding third application for post-conviction relief seeking review of counsels' effectiveness to be untimely under Rule 9.7(G)(3), *Rules of the Oklahoma Court of Criminal Appeals*).

Whether a state procedural default rule is adequate to preclude federal review depends upon how consistently and evenhandedly the state applies the rule. Id. In English, the Tenth Circuit determined that Oklahoma's procedural rules would serve to preclude habeas review of ineffective assistance claims only when trial and appellate counsel differ and the claim can be resolved upon the trial record alone. English, 146 F.3d at 1264. In Myers' case, the same attorneys represented him at the mental retardation trial and on appeal. Consequently, Myers claims of ineffective assistance of mental retardation counsel are not procedurally barred. This Court will review the claims *de novo*.

### 1. No procedure for challenging effectiveness of counsel (sub-claim 1)

This claim must fail as it is apparent from Myers' own recitation of procedural history that he was given the opportunity to challenge the effectiveness of counsel through successor post-conviction procedures. See Dkt. # 58. Unfortunately, and partially through no fault of Myers, his successor application for post-conviction relief in which he attempted to raise ineffective assistance of counsel claims was deemed untimely by the OCCA. Id. Nonetheless, the OCCA did not fail to provide a procedure as Myers asserts in sub-claim one of ground seventeen.

### 2. Ineffective assistance of trial counsel (sub-claim 9)

102

Next, Myers contends that the attorneys assigned to try his mental retardation claim in state court failed to provide constitutionally required effective representation. He claims that his counsel were unprepared for trial and did not have adequate time to prepare for trial due to other obligations. In support of his claim, Myers cites United States v. Cronic, 466 U.S. 648, 658 (1984) (finding that prejudice is presumed for ineffective assistance of counsel claims when "an actual breakdown of the adversarial process occurs"). In Cronic, the Supreme Court recognized that in rare instances it may be appropriate to presume prejudice. Id. at 659. Circumstances that justify a presumption of prejudice include the absence of counsel at a critical stage of trial, the denial of the right to effective cross-examination, and the complete failure to subject the prosecution's case to adversarial testing. Id. However, a presumption of prejudice is the exception, not the rule. Id. Prejudice is presumed only where the attorney abandoned the required duty of loyalty to his client and acted with reckless disregard. According to the Tenth Circuit,

> . . . Strickland requires a showing of both deficient representation and prejudice. In a narrow class of cases, however, including when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), prejudice is presumed. In order to presume prejudice under Cronic, "the attorney's failure to test the prosecutor's case must be complete." Bell, 535 U.S. at 686, 122 S.Ct. 1843, 152 L.Ed.2d 914. This Court has repeatedly found the Cronic presumption inapplicable where "counsel actively participated in all phases of the trial proceedings." Snyder v. Addison, 89 Fed. Appx. 675, 680 (10th Cir. 2004); see also Cooks v. Ward, 165 F.3d 1283, 1296 (10th Cir. 1998) (Cronic inapplicable where "[counsel] was present in the courtroom[,] ... conducted limited cross-examination, made evidentiary objections, and gave a closing argument"); Hooper v. Mullin, 314 F.3d 1162, 1175 (10th Cir. 2002) (Cronic inapplicable where "[d]efense counsel cross-examined the State's guilt-stage witnesses, made objections to the State's evidence, presented some evidence in Petitioner's defense, and made opening and closing arguments"). In fact, we have found a complete absence of meaningful adversarial testing only where the evidence "overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his client," and where counsel "acted with reckless disregard for his client's best interests and, at times, apparently with the intention to weaken his client's case." Osborn, 861 F.2d at 629.

103

Turrentine v. Mullin, 390 F.3d 1181, 1207-08 (10th Cir. 2004) (footnotes omitted). Myers' representation was not marked by a complete failure of adversarial testing. His attorneys were present in the courtroom throughout his mental retardation trial, presented evidence, conducted cross-examination, and made opening and closing arguments. The presumed prejudice standard of Cronic is, therefore, inapplicable. See Florida v. Nixon, 543 U.S. 175, 554 (2004). The proper standard for determining ineffective assistance in Myers' case is found in Strickland. Myers' conclusory allegation that his attorneys did not have time to prepare or conduct an adequate investigation is simply insufficient to convince this Court that they provided deficient representation which resulted in prejudice to him. Strickland, 466 U.S. at 687.

### 3. Failure to investigate adaptive functioning while on death row (sub-claim 10)

In sub-claim 10, Myers presents a more specific allegation of ineffective assistance of mental retardation trial counsel, claiming his attorney failed to obtain any "contemporary information" concerning Myers' deficits in adaptive reasoning. See Dkt. # 56 at 83. In support of this claim he provides affidavits from fellow death row inmates James Malicoat, Edward Primeaux, and Gary Welch, describing their observations about Myers' daily functioning. Id., attachment "S." The information proffered through the affidavits is not significantly different from the evidence presented at trial. As a result, even if trial counsel performed deficiently, Myers has not shown he was prejudiced by counsels' failure to obtain and use the proposed "contemporary evidence" of Myers' ability to function.

### 4. Ineffective assistance of appellate counsel (sub-claim 11)

Finally, Myers asserts his appellate counsel was constitutionally deficient for failing to raise the aforementioned claims of ineffective assistance of counsel on direct appeal of his mental retardation trial. Having found no error or failure on the part of trial counsel, appellate counsel was not ineffective for

failing to raise ineffective assistance of trial counsel claims. "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." Jones v. Gibson, 206 F.3d 946, 959 (10th Cir. 2000) (quoting Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999)).


## XVIII.        Evidentiary Hearing

In his request for relief (Dkt. #15 at 131), Petitioner asks for an evidentiary hearing "as to the Petition as a whole and in particular as to any issues which involve facts not apparent from the existing record" and "to any issues which involve facts disputed by the State." Id. As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently before the Court, this Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. Williams v. Taylor, 529 U.S. 420 (2000). Accordingly, Petitioner's request for an evidentiary hearing is denied.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.      Randall G. Workman is substituted for Marty Sirmons as the party Respondent, and the

**Court Clerk is directed** to note such substitution on the record.

2.      The petition for writ of habeas corpus, as amended (Dkt. ## 16, 56) is **denied**.

**DATED** this 25th day of May, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma